## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MICHIGAN

In re:                                                    Chapter 11

GAINEY CORPORATION, et al, [1]                            Case No. 08-09092
                                                          (Jointly Administered)
                          Debtors.                        Hon. James D. Gregg

_____/


**MOTION TO APPROVE (1) BIDDING PROCEDURES, EXPENSE REIMBURSEMENT, BID PROTECTION, FORM OF ASSET PURCHASE AGREEMENT AND OTHER MATTERS RELATING TO SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S OPERATING ASSETS; (2) SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S OPERATING ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 105(A), AND 363, AND (3) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED NONRESIDENTIAL PROPERTY LEASES UNDER 11 U.S.C. § 365 IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS**

Now Comes the Debtors, by their attorneys Dickinson Wright PLLC, pursuant to §§ 105(a), 363, and 365 of Title 11, United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure, (the "**Bankruptcy Rules**"), and move for entry of orders authorizing and approving (i) bidding procedures, an expense reimbursement payment, bid protection, and various other matters relating to the Debtors' intended sale of substantially all of their operating assets; (ii) the sale of substantially all of the Debtors' operating assets free and clear of all liens, claims, and encumbrances to an entity to be formed by the Najafi Companies, LLC, as set forth herein ("**Purchaser**"), subject to higher and better bids; and (iii) the assumption and assignment of certain executory contracts and unexpired nonresidential property leases in connection with the sale contemplated herein.  In support of its Motion, the Debtors state as follows:

---

[1] The Debtors are Gainey Corporation (Case No. 08-09092), Gainey Transportation Services, Inc. (Case No. 08-09094), Super Service, Inc. (Case No. 08-09096), Freight Brokers of America, Inc. (Case No. 08-09109), Lester Coggins Trucking, Inc. (Case No. 08-09095), and Gainey Insurance Services, Inc. (Case No. 08-09097).

**<u>Jurisdiction</u>**

1.      On October 14, 2008 (the "**<u>Petition Date</u>**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue in possession of their property and to manage their business, as debtors-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.      No trustee or examiner has been appointed in the Debtors' Chapter 11 case.  A committee of unsecured creditors (the "**<u>Committee</u>**") was appointed on November 7, 2008.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**<u>PROPOSED SALE OF DEBTOR'S ASSETS</u>**

**A.      Overview of Proposed Sale Process**

4.      Prior to the Petition Date, the Debtors entered into certain secured loan facilities with what is now approximately 30 lenders (the "**<u>Pre-petition Lending Group</u>**") under which Wachovia Bank, National Association, acts as administrative agent (the "**<u>Agent</u>**").  As of the Petition Date, the total amount outstanding (including accrued interest) under these credit facilities was approximately $240,000,000.00.

5.      During the pendency of the Chapter 11 Cases of the Debtors, the Debtors have engaged in various efforts to negotiate the terms of a consensual plan of reorganization with the Agent.

6.      On June 1, 2009 the Debtors filed their Joint Plan of Reorganization, and accompanying Disclosure Statement (collectively herein, the "**<u>Debtors' Plan</u>**").  Subsequent to the filing of the Debtors' Plan, the Debtors commenced certain negotiations with the Najafi

2

Companies, LLC ("**Najafi**"), with a view towards structuring the participation of Najafi in the Debtors' Plan.  On approximately July 3, 2009, the Debtors and Najafi entered into a non-binding letter of intent with respect to the foregoing.

7.    During the period from July 3 through August 3, 2009, the Debtors, Najafi, and the Agent sought to negotiate a means of effectuating a transaction between the Debtors and Najafi through what was contemplated to be the amended terms of the Debtors' Plan.  On August 4, 2009, the Committee and Wachovia Bank, (as lender, but not as Agent), filed a joint plan of reorganization for the Debtors (the "**Joint Creditor Plan**").  The Joint Creditor Plan provided generally for the replacement of the Debtors' management, the implementation of a sale procedure for the Debtors over a 60 day period, and, if no buyer could be found, for the forced liquidation of substantially all property of the Debtors.

8.    Subsequent to the filing of the Joint Creditor Plan, negotiations ensued between the Debtors, the Committee, and Wachovia Bank.  As a consequence of those negotiations, (i) Wachovia Bank withdrew its support of the Joint Creditor Plan, (ii) the Debtors and Wachovia Bank, with the tentative support of the Committee, agreed that the best mechanism for maximizing asset value for the benefit of the Debtors' estates and their creditors would be through an expeditious sale of substantially all assets of the Debtors, and (iii) the Debtors and Wachovia Bank entered into what they believed was an agreement with the Committee to resolve certain matters relating to the satisfaction of the claims of general unsecured creditors of the Debtors, through the vehicle of a plan to be effectuated after a sale transaction.  As part of the resolution of the foregoing, the Debtors have agreed to proceed with the filing of this Motion, and to seek to promptly effectuate the relief requested herein.

9.      The Debtors have reached an agreement in principle with Najafi with respect to the terms and conditions under which Najafi will purchase all of the assets of the Debtors (other than specific  excluded assets to be identified in the APA as described below), including, without limitation, certain real property, accounts receivable, certain cash and cash equivalents, inventory, equipment, contracts and leases (the "**Assumed Contracts and Leases**"), intangible assets and intellectual property, as well as certain related assets, (collectively, the "**Purchased Assets**") all as set forth in that certain Term Sheet dated August 17, 2009 (the "**Term Sheet**")[2], a copy of which is attached to this Motion as **Exhibit A** and incorporated herein by reference.  The intent of the parties to the Term Sheet is that the Term Sheet will be reduced to an Asset Purchase Agreement (the "**APA**") as soon as reasonably possible, and in any event by not later than **August 19, 2009** (the "**APA Deadline**").  The Debtors shall file a copy of the APA upon finalization by the APA Deadline, and make the APA available to any party in interest who may request a copy prior to the hearing with respect to Bidding Procedures, as set forth herein.

10.     The Term Sheet may be summarized as follows:

(a)     Purchase of Assets.  Except for those assets to be identified by Purchaser as "excluded assets", Purchaser will purchase all assets of all of the Debtors, provided that cash for claims and other expenses totaling approximately $5,000,000 shall be retained by the Debtors for payment of creditor claims under a plan to be filed.  The Purchased Assets will include all of the Debtors' alleged claims of any kind or nature against any person whatsoever, and whether arising prior to or after the filing of the Chapter 11 cases, including without limitation, claims against insiders arising under Chapter 5 of the Bankruptcy Code or otherwise (including any such claims arising under state law of any jurisdiction), which any of the Debtors had or now have against all owners, officers, executives, employees or insiders of the Debtors, and any claims identified in the so-called Expert Report prepared by the professionals of the Official Committee of Unsecured Creditors (the "**Insider Claims**").   Upon closing of the sale transaction, Najafi will cause Purchaser to release and fully discharge any and all such Insider Claims.

---

[2] Capitalized terms not otherwise defined in this Motion shall have the meaning given to such term in the Term Sheet.

(b)     The total purchase price for the Purchased Assets will be $105,100,000, of which $60,433,334 shall be paid in cash or in kind at the Closing (the "**Cash Payment**") and $44,666,666 shall be paid in cash over time or in kind (the "**Deferred Payment**").   Any and all contingencies relating to payment of  the Cash Payment shall be resolved on or before the scheduled auction.  Payment of the Deferred Payment shall be secured by a continuing first priority lien on any Trailers not purchased for cash at closing, and on all Tractors. The Debtors will transfer 354 tractors to the Agent for disposition at closing and 100 tractors will be transferred to the Agent for disposition each month thereafter. A disposition process with respect to the Tractors will be conducted over a period of 12 months commencing from the Closing Date.

(c)     Purchaser shall deposit $1,000,000 with the Agent, which shall constitute Purchaser's good faith deposit under the Bidding Procedures.  Purchaser shall be entitled to an Expense Reimbursement Fee in an amount not to exceed $500,000.00, subject to, and pursuant to all of the terms and conditions set forth in the Bidding Procedures.

(d)     The amounts paid by the Purchaser for the Purchased Assets shall be in full satisfaction of all secured and unsecured claims of the Agent and all of the Lenders in any way relating to the Debtors.

(e)     The purchase of the Purchased Assets shall be subject to approval of the sale of the Purchased Assets free and clear of any and all liens under Section 363(f) of the Bankruptcy Code by the Bankruptcy Court, pursuant to an order acceptable in form and substance to the Purchaser (the "**Sale Order**").

(f)     The parties shall conclude an APA on or before August 19, 2009. The parties shall use their best efforts to conclude the auction on or before October 6, 2009, and to obtain entry of the Sale Order not later than October 7, 2009.  The Closing Date for the purchase of the Purchased Assets shall be promptly after the entry of a final, non-appealable Sale Order.

(g)     The Purchaser shall prepare and deliver an APA to the Debtors setting forth the particular terms and conditions of its proposed acquisition of the assets pursuant to an Auction pursuant to § 363 of the Bankruptcy Code.  The APA will include normal and customary representations, warranties, covenants and conditions standard for transactions of this type, including, without limitation, covenants relating to fleet maintenance..

11.     Those assets not purchased by the Purchaser under the APA (collectively with other remaining assets of the Debtors, the "**Excluded Assets**") will remain part of the Debtors' bankruptcy estate and be sold or otherwise disposed of for the benefit of creditors in accordance

with the Bankruptcy Code and Rules, pursuant to a timely filed plan to be filed by the Debtors (the "**Plan**").

12.     Consequently, the Debtors request authority to sell the Purchased Assets to the Purchaser free and clear of liens, claims, and encumbrances, pursuant to the terms of the Term Sheet, as finalized by the APA, and in accordance with Section 363(f) of the Bankruptcy Code. As a preliminary matter, the Debtors requests the entry of an order (the "**Sale Procedures Order**"), the form of which is attached to this Motion as **Exhibit B** and incorporated herein by reference, approving (a) the form of the APA and (b) certain bidding procedures (the "**Bidding Procedures**"), a copy of which is attached to this Motion as **Exhibit C** and incorporated herein by reference, for the auction of the Purchased Assets.  The Debtors request that the Court schedule a hearing to approve the Bidding Procedures for **August 26, 2009 at 10:00 a.m**., or as soon thereafter as counsel may be heard. The Debtors propose to give notice of the hearing on the Bidding Procedures to the Court's Special Matrix, by first class mail, as well as to all parties receiving electronic notice, which the Debtors submit is appropriate and satisfactory notice with respect to the Bidding Procedures, under the circumstances presented by this case.

13.     The Debtors further request that they be authorized to provide certain bid protections ("**Bid Protection**") and to pay to Purchaser an expense reimbursement fee (the "**Expense Reimbursement Fee**").  For purposes hereof, the Expense Reimbursement Fee shall be an amount equal to Purchaser's actual, reasonable out-of-pocket expenses, based on reasonably detailed documentation incurred by it in connection with the transactions contemplated by the APA, including, without limitation, Purchaser's legal fees, but such Expense Reimbursement Fee shall not, in any event exceed $500,000.   The Expense Reimbursement Fee shall be payable only in the event Purchaser is not the successful bidder

under the Bidding Procedures proposed herein, provided, that such fee shall not be payable if Purchaser fails to close the sale transaction after being designated the Successful Bidder, and the Purchased Assets are thereafter sold to a competing bidder.

14.     The Debtors also request, as part of the approval of the Bidding Procedures that the Court approve a form of notice to all creditors of the sale (the "**Notice of Sale**") in generally the form attached to this Motion as **Exhibit D** and incorporated herein by reference.

15.     The Debtors request that this Court schedule a hearing on **October 7, 2009**, at 10:00 a.m. Eastern Time, or as soon thereafter as counsel may be heard (the "**Sale Hearing**"), to approve the sale of the Purchased Assets to the highest and best bidder pursuant to the Bidding Procedures.  The Debtors request that the Court enter an order at the Sale Hearing authorizing the Debtors to sell the Purchased Assets free and clear of all liens, claims, and encumbrances on substantially the same terms and conditions as are set forth in the APA.

## B.     Proposed Bidding Procedures

16.     In order to move forward promptly with the sale process, but to also insure the highest and best offer for the Purchased Assets, the Debtors have developed the Bidding Procedures as a means of expediting the sale process, allowing and fostering competitive bidding, and balancing the need to provide reasonable protections to the Purchaser as a stalking horse bidder.  Such bidding procedures will also further the goal of conducting a fair and open auction, in a fashion that promotes interest in the sale process by capable, motivated bidders, who are likely to close a transaction.

17.     As set forth more specifically in the Bidding Procedures, in order to participate in the sales process, each potential bidder (a "**Potential Bidder**") for the Purchased Assets must be determined to be a "**Qualified Bidder**".  Only "Qualified Bidders" will be permitted to

participate in the sale process. To be deemed a Qualified Bidder, the Potential Bidder must deliver to the Debtors and the Agent not later than 4:00 p.m. Eastern Time on **September 25, 2009,** the following:  (i) if not previously delivered, an executed confidentiality agreement acceptable to the Debtors, (ii) current audited financial statements of the Potential Bidder or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, current audited financial statements of the equity holder(s) of the Potential Bidders, or such other form of financial disclosure acceptable to the Debtors and the Agent, and demonstrating such Potential Bidder's ability to close a proposed transaction regarding the Purchased Assets and (iii) a preliminary (non-binding) proposal regarding the purchase price range of the bid and the financing of the transaction (collectively, the "**Potential Bid Package**").

18.    After reviewing any Potential Bid Packages, the Debtors and the Agent will determine who is a "Qualified Bidder" for the Purchased Assets.[3]  A Potential Bidder that delivers the Potential Bid Package to the Debtors, whose financial information demonstrates the financial capability to consummate a sale, and that the Debtors and the Agent mutually determine is reasonably likely (based on availability of financing, experience, and other considerations) to submit a bona fide offer and to be able to consummate a sale if selected as the successful bidder will deemed a Qualified Bidder.  The Debtors have determined that the Purchaser is a Qualified Bidder based on its willingness to act as stalking horse bidder in connection with the auction for the Purchased Assets and the Debtors' evaluation of Purchaser's financial qualifications.  In connection with such determination, Purchaser has also indicated to

---

[3] In all matters in this Motion contemplating determinations by the Debtors and the Agent, the Debtors and the Agent will, in their discretion, consult with the Committee as appropriate, and in a manner consistent with any underlying agreements between the Debtors, the Agent and the Committee.  To the extent that the Debtors and the Agent are unable to reach agreement as to any matter set forth herein which requires their mutual determination or agreement, each of the Debtors and the Agent reserve their right to seek a determination as to such matter by the Court.

the Debtors its willingness to forward a cash earnest money Deposit (as defined below), in the amount of $1,000,000, to be held by the Agent, in trust, pending the closing of the Sale. Accordingly, the Debtors have requested that the Agent approve the treatment of Purchaser as a Qualified Bidder, and the Agent has agree to provide such approval by not later than August 25, 2009.

19.     The Bidding Procedures require Qualified Bidders to deliver a written copy of their bids to the Debtors not later than 4:00 p.m. Eastern Time on **September 29, 2009** (the "**Bid Deadline**").  The Debtors shall then promptly distribute copies of the bids to (i) counsel for the Agent, (ii) the United States Trustee, (iii) counsel for the Committee, and (iv) counsel for Purchaser.  Purchaser, having already submitted its bid for the Purchased Assets, shall not be required to submit any additional bid, but shall be permitted to submit an additional bid in response to the bid of any other Qualified Bidder.  The Debtors may, with the consent of the Agent, extend the bid Deadline once or successively, but are not obligated to do so.  All initial bids by Qualified Bidders other than Purchaser must also include the following documents (the "**Required Bid Documents**"):

- A letter stating that the Bidder's offer is irrevocable until thirty (30) days after the Sale Hearing.

- An executed copy of an asset purchase agreement in a form substantially the same as the APA.  Any changes to the APA must be (a) non-material, (b) made to and marked on such form of agreement, and (c) agreed to by the Debtors and the Agent.  The asset purchase agreement must set forth a bid at least $1,000,000 in excess of the Purchase Price, as defined in the APA, and not be subject to any financing or other condition not set forth in the APA.  Alternatively, in the event that a Qualified Bidder wishes to make a bid that contemplates a non-contingent, all cash offer, payable as of closing, such Bidder must provide the Debtors and the Agent with a form of asset purchase agreement reasonably acceptable to the Debtors and the Agent, which shall be available to parties in interest upon approval of the Bidding Procedures.

- A good faith deposit (the "**Deposit**") in the form of a certified check (or other form acceptable to the Debtors and the Agent) payable to the order of the Debtors (or such other party as the Debtors may designate), and to be held by the Agent as set forth herein, in the amount of $1,000,000.

- Written evidence of a commitment for financing or other evidence of ability to consummate the proposed transaction satisfactory to the Debtors and the Agent.

- Written acknowledgment that the bid is not subject to further due diligence review, board approval, obtaining financing, or the receipt of any non-governmental consents

- Written evidence that the bid is not subject to any breakup fee, termination fee, expense reimbursement or similar type of payment.

20.     After all Qualified Bids have been received, the Debtors shall conduct an auction (the "**Auction**") with respect to the Purchased Assets if a Qualified Bid other than that of Purchaser has been received.  Subject to the Court's approval, the Auction shall take place the day prior to the Sale Hearing, at 10:00 a.m. at the offices of Dickinson Wright PLLC,  200 Ottawa Avenue, NW, Suite 1000, Grand Rapids, Michigan  49503, or such later time or other place as the Debtors, after consultation with the Agent, shall notify all Qualified Bidders who have submitted Qualified Bids.  Only Purchaser, the Agent (if making a bid in accordance with Section 363(k) of the Bankruptcy Code) and any other Qualified Bidders will be eligible to participate in the Auction.  Based upon the terms of the Qualified Bids received, the level of interest expressed as to the Purchased Assets, and such other information as the Debtors and the Agent determine is relevant, the Debtors will conduct the Auction in the manner they determine, with the consent of the Agent, will result in the highest or otherwise best offer for the Purchased Assets.  If there is not a timely Qualified Bidder other than Purchaser, then Purchaser shall be deemed the Successful Bidder.

21.     Upon the Auction's conclusion, the Debtors and the Agent, in consultation with their respective advisors, shall (i) review each Qualified Bid on the basis of financial and

contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, and (ii) identify the highest and otherwise best offer (the "**Successful Bid**").  At the Sale Hearing, the Debtors shall present the Successful Bid to the Court for approval.

22.     If the Successful Bidder fails to consummate the transactions by the Closing Date, as defined in the applicable purchase agreement, the Debtors shall (i) retain the Deposit provided by such bidder; and (ii) be free to consummate the proposed sale of the Purchased Assets with the next highest and best bidder at the final price bid by such competing bidder at the Auction (or, if that competing bidder is unable to consummate the purchase of the Purchased Assets at that price, the Debtors may consummate the transaction with the next highest and best competing bidder, and so forth) without the need for an additional hearing or order of the Court; subject however, to the consent of the Agent.

## C.    Assumption and Assignment of Executory Contracts; Cure Amounts

23.     As part of the Sale, the Debtors seek to assume and assign the Assumed Contracts and Leases to the Purchaser pursuant to the terms of the APA, or such other purchase agreement submitted by the Successful Bidder.  With respect to any other contracts and leases of the Debtors not designated as Assumed Contracts and Leases under the APA, the Debtors will file a motion to assume or reject such contracts and leases in connection with the confirmation of the Plan.  The assumption and assignment of the Assumed Contracts and Leases shall be effective upon the Closing of the Sale unless otherwise order by the Court, upon motion by the Debtors, prior to Closing.

24.     Purchaser and any other Qualified Bidder shall have until **September 30, 2009** to designate the Assumed Contracts and Leases that it intends for the Debtors to assume and assign

to it pursuant to Section 365 of the Bankruptcy Code.  The Purchaser shall pay all amounts necessary to cure any monetary defaults under the Assumed Contracts and Leases, as required by Section 365 of the Bankruptcy Code.  A schedule of the Debtors' calculation of the amount that the Debtors believe must be paid to cure all defaults under each of Assumed Contracts and Leases (the "**Cure Amounts**") will be filed and served upon all parties to the Debtors' executory contracts and unexpired leases no later than **October 2, 2009** (the "**Cure Amount Deadline**").

25.    The Debtors request that unless a party to an executory contract or unexpired lease files with this Court and serves upon counsel for the Debtors, Daniel F. Gosch, Dickinson Wright PLLC,  200 Ottawa Ave NW, Suite 1000, Grand Rapids, Michigan  49503, and counsel to the Purchaser  Dean C. Waldt, Ballard Spahr, Plaza 1000 at Main Street,  Vorhees, NJ  08043, an objection to its scheduled Cure Amount on or before **October 5, 2009** (the "**Cure Objection Deadline**"), such party to an executory contract or unexpired lease shall be forever barred from objecting to the Cure Amount, and from asserting any additional cure or other amounts with respect to its executory contract or unexpired lease, and the Debtors and the Purchaser will be entitled to rely solely upon the Cure Amounts.  The Debtors further request that if an objection to a scheduled Cure Amount is filed by a party to an executory contract or unexpired lease, the Court will hear that objection at the Sale Hearing.  The Debtors will cooperate with the parties to the Debtors' executory contracts and unexpired leases to attempt to reconcile any differences in a particular Cure Amount believed to exist prior to the Sale Hearing.

26.    The Cure Amounts scheduled should be deemed to include any such actual or pecuniary losses from an existing default, if any, under the executory contract or unexpired lease. Consequently, the amounts necessary to pay the Cure Amounts as scheduled or determined by

this Court will compensate or provide adequate assurance that the appropriate party will be compensated for any such actual or pecuniary loss.

**D.      Expense Reimbursement Fee and Bid Protection**

27.     To induce Purchaser to act as a stalking horse bidder and thereby set a floor price for the Purchased Assets, the Debtors have agreed to request authority to offer Purchaser the Bid Protection in the form of an initial minimum $1,000,000.00 bid in excess of the Purchase Price set forth in the APA, and a minimum bid increments of $500,000.00 thereafter.  In addition, the Debtors have agreed to pay to Purchaser the Expense Reimbursement Fee, subject always to the conditions described in Paragraph 12 hereof, in the event the Purchased Assets are sold to a competing bidder.  Purchaser has expended, and likely will continue to expend, considerable time, money and attention in pursuit of this sale and have engaged in arm's length, good faith negotiations with the Debtors.  The Term Sheet is, and the APA will be a product of those negotiations and each benefits the estate by providing a floor price for the Purchased Assets and a form of agreement to be used in negotiations with Potential Bidders.

28.     The Debtors further request that the obligation to pay the Expense Reimbursement Fee (i) be treated as an administrative expense claim under Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code, (ii) not be subordinate to any other administrative expense claim, and that (iii) the Expense Reimbursement Fee obligation survives termination of the APA.

29.     The Expense Reimbursement Fee and the Bid Protections are material inducements for, and a condition to, Purchaser's entry into the APA.  The Debtors believe that each are reasonable in light of the comparative size of the proposed transaction and the fact that

13

Purchaser's efforts and due diligence have established a floor price and increased the opportunity for the Debtors to receive the highest and otherwise best price for the Purchased Assets.

**E.    Notice of Sale**

30.    Within two (2) business days after entry of the Sales Procedures Order, the Debtors will serve the Notice of Sale on all of its known creditors by first class United States mail, postage prepaid, and also serve the Notice of Sale and the Bidding Procedures by first class, United States mail, postage prepaid, upon (i) the Agent and its counsel, and all other entities known to have asserted any lien, claim or encumbrance in or upon the Purchased Assets; (ii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested herein; (iii) counsel for the Committee; (iv) the United States Trustee, the United States Attorney's Office, and the Internal Revenue Service; (v) counsel for Purchaser; (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002; and (vii) all parties known to the Debtors to have expressed an interest in acquiring the Purchased Assets and other potential purchasers.

## APPLICABLE LEGAL AUTHORITY

**A.    Sales Outside the Ordinary Course of Business**

31.    Section 363 of the Bankruptcy Code provides that the Debtors, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  See 11 U.S.C. §363(b).  To approve the use, sale or lease of property outside the ordinary course of business, this Court need only determine that the Debtors' decision is supported by "some articulated business justification."  *See, e.g. Stephens Ind., Inc. v. McClung,* 789 F.2d 386, 389-90 (6th Cir. 1986); *Fulton State Bank v. Schipper,* 933 F.2d 513, 515 (7th Cir.

1991); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F2d 1063, 1070 (2d Cir. 1983); *see also In re Abbot Dairies of Pa., Inc.,* 788 F.2d 143, 145-47 (3d Cir. 1986); *In re Telesphere Communications, Inc.,* 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999); *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 175-76 (D.Del. 1991).

32.    Once the debtor articulates a valid business justification, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company. *In re S.N.A. Nut Company,* 186 B.R. 98 (Bankr. N.D. Ill. 1995); *In re Integrated Resources. Inc.,* 147 B.R. 650, 656 (S.D.N.Y. 1992); *In re Johns-Manville Corp.,* 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtors' management decisions.").

33.    Indeed, when applying the "business judgment" rule, courts show great deference to the debtor's decision-making. *See Summit Land Co. v. Allen (In re Summit Land Co.),* 13 B.R. 310, 315 (Bankr. D. Utah 1981).  Accordingly, this Court should grant the relief requested in this Motion if the Debtors demonstrate a sound business justification for that relief.  *See Stephens Ind., Inc.*, 789 F.2d at 389-90; Schipper, 933 F.2d at 515; *In re Lionel Corp.,* 722 F.2d at 1071; *In re Delaware Hudson Ry. Co.,* 124 B.R. 169 at 179.

34.    As explained above, the Debtors have a sound business justification for selling the Purchased Assets at this time.  The claims of the Agent in the Debtors' cases far exceed the claims of any other creditor constituency.  Without a consensual means of addressing the Agent's claims, the most likely outcome in the Debtors' Chapter 11 Cases will be the straight liquidation of all of the Debtors' assets, in a manner that may not preserve the going concern business of the Debtors.  The proposed sale process that has been agreed to by Wachovia Bank, as a lender and

the Debtors as part of an overall resolution of the Debtors' Chapter 11 Cases will, however, preserve the going concern business, and thus maximize the value of the Debtors' estates. As a part of this overall resolution, the Debtors and Wachovia Bank, as a lender, have sought to reach agreement with the Committee on a means of funding a dividend for general unsecured creditors (other than the Agent ) which dividend would be in excess of the amount of any dividend that is otherwise likely to be attained by the holders of such claims in a liquidation. While those discussions are continuing, the Debtors reasonably believe that the sale process, as supported by Wachovia Bank, will provide a means to effectuate a resolution with the Agent and the Committee, bring finality to these proceedings, and provide for the continuation of the Debtors' going concern, with the accompanying preservation of jobs, and business opportunities for the Debtors' suppliers.

35.    For these reasons, the Debtors have determined, in the exercise of their business judgment, that the most reasonable option for maintaining the Debtors' going concern, and maximizing the value of the estate and the amount to be recovered by creditors is through the sale of the Purchased Assets in the manner and in the time frame set forth in the Bidding Procedures. The Debtors' request for approval to sell the Purchased Assets in accordance with the Bidding Procedures should be allowed accordingly.

**B.    Bid Protection and Expense Reimbursement Fee**

36.    In order to induce Purchaser to spend the time, energy, and resources necessary to submit an offer that the Debtors can use as a minimum or stalking horse bid at the auction, the Debtors requests authority to offer Purchaser the Bid Protection in the form of an initial minimum $1,000,000 bid in excess of the Purchase Price, and a minimum bid increment of $500,000 thereafter. The Debtors believes that a compelling need exists to authorize the Bid

Protection in order to induce Purchaser to submit the first bid for the Purchased Assets as set forth herein.  Moreover, the Debtors believe that the proposed Bid Protection will benefit the estate by providing an incentive to Purchaser to expend the resources necessary to consummate the APA.  Finally, the Bid Protection will prevent the inefficiencies and delays of bidding in small increments that do not provide benefit to this bankruptcy estate.

37.     The Debtors have also agreed to provide Purchaser with the Expense Reimbursement Fee as set forth herein.  Expense reimbursement such as that included in the APA are "an incentive payment to a prospective purchaser with which a company fails to consummate a transaction."  *In re S.N.A. Nut Company,* 186 B.R. at 101.  "Agreements to provide breakup fees or reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers.'"  *Id.*; *see also In re 995 Fifth Ave. Associates, L.P.,* 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992) (bidding incentives may "be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking ").

38.     In the bankruptcy context, the test for determining whether a proposed fee of this nature should be approved is whether it is in the best interests of the estate.  *Id.* at 140; *see also In re America West Airlines, Inc.,* 166 B.R. 908 (Bankr. D. Ariz. 1994); *In re Hupp Industries, Inc.,* 140 B.R. 191 (Bankr. N.D. Ohio 1992).  In particular, there must be compelling circumstances "which clearly indicate that payment of the fee would be in the best interests of the estate." *S.N.A. Nut Company,* 186 B.R. at 105.

39.     The Debtors believe that the Expense Reimbursement Fee satisfies this standard. The primary circumstance compelling allowance of the Expense Reimbursement Fee is to entice offers for the Purchased Assets so that a transaction can be consummated as quickly as possible.

The Expense Reimbursement Fee will be awarded only if a transaction is consummated that does not involve Purchaser. *Id*. at 103, N.5 (denying break-up fee in the absence of any consummated sale).

40.     The Debtors' ability to offer the Bid Protection and the Expense Reimbursement Fee enables the Debtors to ensure the sale of the Purchased Assets to a contractually committed bidder at a price it believes to be fair, while providing the Debtors with the potential of even greater benefit to its estate through higher bids.  The Bid Protection and Expense Reimbursement Fee should be approved accordingly.


**C.      Sales Free and Clear of Liens, Claims and Encumbrances**

41.     Under § 363(f) of the Bankruptcy Code, a debtor in possession may sell property free and clear of any lien, claim, or encumbrance in such property if, among other things:

> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)     such entity consents;
>
> (3)     such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
>
> (4)     such interest is in bona fide dispute; or
>
> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

42.     Because Section 363(f) is drafted in the disjunctive, the Debtors' satisfaction of any one of its five requirements will be sufficient to permit the sale of the Purchased Assets free and clear of all liens, claims, and encumbrances.  The Agent, on behalf of the Pre-Petition Lending Group, is the   primary holder of a lien on the Purchased Assets.  The Agent has

supported the sale process, and has recommended to the Lenders that they consent to the sale to the Purchaser, subject to higher and better offers being submitted in connection with the Sale Procedures. Such consent, if obtained from the Agent and the Lenders, would satisfy the requirements of §363(f)(2).

43.    Moreover, all holders of interests, including the Agent, can be compelled to accept a money satisfaction of their liens in legal or equitable proceedings in accordance with § 363(f)(5). Such legal or equitable proceedings include proceedings to confirm a plan or reorganization, under which the holder of a lien may be compelled to accept payment in satisfaction of its lien pursuant to 11 U.S.C. § 1129(b)(2)(A). Indeed, Section 1129(b)(2)(A) of the Bankruptcy Code specifically allows a debtor-in-possession to sell property subject to a lien, free and clear of such lien, if such lien attaches to the net proceeds of the sale, subject to any claims and defenses the debtor may possess with respect thereto.

44.    Based on the foregoing, the Debtors believe that they will be able to meet one or more of the standards set forth in Section 363(f) of the Bankruptcy Code, and that the Purchased Assets may be sold free and clear of liens, claims and encumbrances. The Debtors propose that all liens in the Purchased Assets attach to the net proceeds of the proposed sale, in the order of their pre-petition priority.

**D.    Good Faith Sale under Section 363(m) of the Bankruptcy Code**

45.    The Debtors also request that the court find that the Successful Bidder is entitled to the benefits and protections provided by Section 363(m) of the Bankruptcy Code, as a purchaser who has acted in good faith in connection with the transaction. Section 363(m) protects a purchaser of assets sold pursuant to Section 363 from the risk that it will lose its interest in the purchased assets if the sale is reversed on appeal.

46.     This Court has previously held that a party would have to show fraud or collusion between a purchaser and a debtor in possession or trustee in order to demonstrate a lack of good faith.  See *In re Embrace Systems Corp.*, 178 B.R. 112(Bankr. W.D. Mich 1995).  The Debtors submit that no such facts exist in this case.  The Term Sheet between the Purchaser and the Debtors is an arm's length agreement, which was negotiated in good faith.  All relationships between principals of the Debtors and the Purchaser have been identified in the Term Sheet, and will be more fully described in connection with the completion of the APA, as finalized, and the Term Sheet identifies certain other terms and conditions of the proposed transaction which relate to officers and insiders of the Debtors.  The Agent has closely monitored the delivery of the Term Sheet and the relating documents, and will be closely involved in the consummation of the sale transaction.  Accordingly, the Debtors request that the Court make a finding that the Purchaser has acquired the Purchased Assets in good faith within the meaning of Section 363(m) of the Bankruptcy Code.

**E.     Summary**

47.     The following chart summarizes the proposed timeline for the sale process contemplated in the Bid Procedures Order and Sale Order:

| Event | Date | Action Required |
|---|---|---|
| Sale Procedures | 08/26/09 | Court enters Sale Procedures Order |
| Sale Notice Service Deadline | 08/30/09 | Deadline for Debtors to provide notice of sale |
| Potential Bid Package Deadline | 09/25/09 | Deadline to submit materials required to qualify as bidder |
| Competing Bid Deadline | 09/29/09 | Deadline to submit Required Bid Documents/Deposit |
| Assumed Contract Designation Date | 09/30/09 | Deadline for Purchaser and Potential Bidders to designate the Assumed Contracts and Leases for the Debtors to |

| | | assume and assign |
|---|---|---|
| Cure Amount Deadline | 10/02/09 | Deadline for Debtors to file Cure Amount Schedule |
| Assumed Contract/ Leases and Cure Objection Deadline | 10/05/09 | Deadline for a party to executory contract to file objection to either Cure Amount or assumption of contract/lease |
| Sale Date | 10/06/09 | Auction Sale held at offices of Debtors' counsel |
| Sale Hearing | 10/07/09 | Court Approves Sale |
| Closing Date | TBD | Sale Closes |

## CONCLUSION

WHEREFORE, the Debtors request that the Court enter orders  (i) approving the Bidding Procedures, a Expense Reimbursement Fee, Bid Protection, the form of the APA, and various other matters relating to the sale of the Purchased Assets; (ii) authorizing the Debtors' sale of the Purchased Assets free and clear of liens, claims and encumbrances to Purchaser subject to higher and better bids; and (iii) grating the Debtors such other and further relief as the Court deems just and proper.

Dated:  August 17, 2009                    Dickinson Wright PLLC

                                   By:  ___/s/ Daniel F. Gosch_____
                                        Daniel F. Gosch (P35495)
                                   Attorneys for Debtors
                                   200 Ottawa Ave. NW, Suite 900
                                   Grand Rapids, Michigan  49503
                                   (616) 458-1300

GRAPIDS 29710-999 239025