## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

In re:                                          **Case No. 08-09092 and
                                                consolidated cases**

**GAINEY CORPORATION**, *et al.*[1]              **Chapter 11**

      Debtors.                              **Jointly Administered Cases
                                                Honorable James D. Gregg**

_____

### ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, AND (C) GRANTING RELATED RELIEF.

This matter is before the Court on the amended motion (the "Sale Motion"),[2] dated

October 9, 2009, of the above captioned debtors and debtors in possession (the "Debtors"), for

entry of an order, pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the

"Bankruptcy Code"), and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), (a) approving the Asset Purchase Agreement,

as such agreement has been amended in the form attached hereto as Exhibit A (the "APA"), by

and between the Debtors and Michigan Truck Acquisition, LLC (the "Purchaser"); (b) granting

the Debtors authority to sell substantially all of their assets as set forth in the APA free and clear

of all liens, liabilities, claims, interests and encumbrances; (c) authorizing the Debtors to assume

and assign the certain contracts and unexpired leases to the Purchaser; and (d) granting related

---

[1] The Debtors are Gainey Corporation (Case No. 08-09092), Gainey Transportation Services, Inc. (Case No. 08-09094), Super Service, Inc. (Case No. 08-09096), Freight Brokers of America, Inc. (Case No. 08-09109), Lester Coggins Trucking, Inc. (Case No. 08-09095), and Gainey Insurance Services, Inc. (Case No. 08-09097).

[2] Unless otherwise defined herein, all capitalized terms shall have the same meaning as set forth in the APA (defined herein) and the Sale Motion, as applicable.

relief; and the Court having entered an order approving the amended bidding procedures on October 30, 2009 (the "Bidding Procedures Order"), and the Court having heard statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Sale Motion and at a hearing before the Court on November 17, 2009 (the "Sale Hearing"); and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and, except as provided herein, all objections to the Proposed Cure Notice and the Sale Motion having been withdrawn, overruled and/or considered, and after due deliberation thereon,

### THE COURT HEREBY FINDS AND DETERMINES THAT:[3]

#### Jurisdiction, Final Order and Statutory Predicates

A.      This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).   Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).   Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

---

[3]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    The statutory predicates for the relief requested in the Sale Motion are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007 and 9014.

## Notice of the Sale, Auction and the Cure Amounts

D.    Actual written notice of the Sale Hearing, the Auction, the Sale Motion, the Sale, and the assumption of the Assumed Contracts, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to: (i) the United States Trustee for the Western District of Michigan; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) all other applicable state and federal taxing authorities having jurisdiction over the Purchased Assets; (v) the United States Department of Justice; (vi) the United States Environmental Protection Agency and any applicable state environmental agency; (vii) the counterparties to each of the Assumed Contracts; (vii) all other parties known to Debtors who have or may have asserted liens or interests against any of the Purchased Assets; (viii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (ix) all other entities known to have expressed an interest in a transaction with respect to all or part of the Purchased Assets; (x) counsel for the official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee"); and (xi) counsel for Wachovia Bank, National Association, as administrative agent for the prepetition lending group under those certain prepetition secured loan facilities.

E.    In accordance with the Bid Procedures Order, the Debtors have served a notice of cure amounts – the Proposed Cure Notice (as defined in the APA) – upon each counterparty to an Assumed Contract that the Debtors seeks to assume and assign to the Purchaser on the Closing Date.  The service of such Proposed Cure Notice was good, sufficient and appropriate

under the circumstances and no further notice need be given in respect of establishing a Cure Amount for the respective Assumed Contracts.  Counterparties to the Assumed Contracts have had an opportunity to object to the Cure Amount set forth in the Proposed Cure Notice.

F.      As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale Hearing has been provided in accordance with sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Debtors also have complied with all obligations to provide notice of the Sale Motion, the Auction, and the Sale Hearing required by the Bid Procedures Order. The foregoing notice described in paragraphs D and E was good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Auction, the Sale Hearing, the Sale or the assumption and assignment of the Assumed Contracts is required.

G.      The disclosures made by the Debtors concerning the APA, the Auction, the assumption and assignment of the Assumed Contracts, and the Sale Hearing were complete and adequate.

## Good Faith of Purchaser

H.      The Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

I.      Purchaser is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (a) Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (b) Purchaser complied with the provisions in the Bid Procedures Order; (c) Purchaser agreed to subject its bid to the

competitive bidding procedures set forth in the Bid Procedures Order; (d) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the APA have been disclosed; (e) Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (f) no common identity of directors or controlling stockholders exists between the Purchaser and the Debtors; and (g) the negotiation and execution of the APA and any other agreements or instruments related thereto was at arm's-length and in good faith.

### Highest and Best Offer

J.       The Debtors conducted an Auction process in accordance with, and has otherwise complied in all respects with, the Bid Procedures Order.  The Auction process set forth in the Bid Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets.  The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets.

K.       Purchaser was designated the Successful Bid in connection with the Auction.  The APA constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination in consultation with Wachovia and the Committee, that the APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.  The amounts payable by Harvey N. Gainey under the terms of the APA, if paid in accordance with the terms of the APA, are reasonable and constitute adequate consideration for Purchaser's acquisition of the "Insider Claims" described in the APA.

L.      The APA represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of these chapter 11 cases. No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estates than the Purchaser.

M.      Approval of the Sale Motion and the APA and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

N.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale. The Debtors are authorized pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code to, among other things, enter into the APA, sell the Purchased Assets free and clear of all Liens and assume and assign the Assumed Contracts pursuant to the terms of the APA and this Order.

### No Fraudulent Transfer

O.      The consideration provided by the Purchaser pursuant to the APA for its purchase of the Purchased Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

P.      The Purchaser is not a mere continuation of the Debtors or their estates and there is no continuity between the Purchaser and the Debtors. The Purchaser is not holding itself out to the public as a continuation of the Debtors. The Purchaser is not a successor to the Debtors or their estates and the Sale does not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtors.

**Validity of Transfer**

Q.      The Debtors have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the APA, except as otherwise set forth in the APA.

R.      The transfer of each of the Purchased Assets to the Purchaser will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will, as of the Closing Date, vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Liens accruing, arising or relating to any time prior to the Closing Date, except for any Permitted Liens and Assumed Liabilities under the APA.

**Section 363(f) Is Satisfied**

S.      The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full. Therefore, the Debtors may sell the Purchased Assets free and clear of any interest in such property, to the extent set forth in this Order.

T.      The Purchased Assets shall be sold free and clear of any and all Liens (statutory or otherwise, including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), hypothecations, encumbrances, security interests, mortgages, debts, levies, indentures, pledges, leases (except to the extent the Purchased Assets constitute Assumed Contracts), restrictions (whether on voting, sale, transfer, disposition or otherwise), charges, instruments, preferences, priorities, security agreements, easements, covenants, encroachments, conditional sales agreements, title retention contracts, options, claims (as that term is defined in section 101(5) of the Bankruptcy Code), judgments, offsets, contracts, recoupment, rights of recovery, rights of pre-emption, rights of first refusal or other third-party rights, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-

ego, environmental or tax (including claims for any and all foreign, federal, state and local taxes), decrees of any court or foreign or domestic governmental authority, of any kind or nature, reclamation claims, obligations, liabilities, demands, and guaranties, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (collectively, the "Encumbrances") other than the Permitted Liens and Assumed Liabilities under the APA because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.

U.    The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby if the Sale of the Purchased Assets to the Purchaser, the assumption, assignment and sale of the Assumed Contracts to the Purchaser, and the assumption of the Assumed Liabilities by the Purchaser were not (except as otherwise provided in the APA with respect to the Assumed Liabilities and Permitted Liens) free and clear of all Encumbrances, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the APA and with respect to the Assumed Liabilities and the Permitted Liens), be liable for any of such Encumbrances.

V.    Unless otherwise provided in the APA, neither the Purchaser nor its affiliates shall be responsible for any claims (as defined in section 101(5) of the Bankruptcy Code), including in respect of the following:    (a) any labor or employment agreements; (b) any

mortgages, deeds of trust and security interests; (c) intercompany loans and receivables between the Debtors; (d) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtors; (e) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) state unemployment compensation laws or any other similar state laws, or (xii) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (f) any bulk sales or similar law; (g) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (h) any theories of successor liability.

W.      The Debtor may sell the Purchased Assets free and clear of all Encumbrances (except for any Permitted Liens and Assumed Liabilities under the APA) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of Encumbrances against the Debtor, its estate or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.

**Assumption of the Assumed Contracts**

X.    The assumption of the Assumed Contracts pursuant to the terms of this Order is integral to the APA and is in the best interests of the Debtors and their estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

Y.    Except as set forth herein, the respective amounts set forth on <u>Exhibit B</u> attached hereto are the maximum amounts asserted by non-debtor third parties as necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Assumed Contracts (the "<u>Cure Amounts</u>").

Z.    Except as set forth herein, the Debtors have (directly or through the Purchaser): (i) cured and/or provided adequate assurance of cure of any default existing prior to the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (ii) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.

AA.    Except as set forth herein, the Purchaser has provided adequate assurance of its future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

**Compelling Circumstances for an Immediate Sale**

BB.    To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the APA.  Time is of the essence in consummating the Sale.

CC.    Given all of the circumstances of this chapter 11 case and adequacy and fair value of the purchase price under the APA, the proposed Sale of the Purchased Assets to Purchaser constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

### General Provisions

1.    The relief requested in the Sale Motion is granted and approved, and the sale contemplated thereby and by the APA is approved as set forth in this Order.

2.    Except as provided herein, all objections that have not otherwise been affirmatively withdrawn, waived, or settled, and all reservations of rights included therein, are hereby specifically overruled or denied on the merits.  To the extent any of the Objections were settled, the terms of this Order reflect the resolution of same.  All other objections to the Sale Motion or the relief requested therein that have not been identified above or withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are, except as provided in other orders of the Court, hereby overruled on the merits.

### Approval of the APA

3.    The APA and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

4.    Pursuant to sections 105, 363(b) and 365 of the Bankruptcy Code, the Debtors are authorized and directed to take any and all actions necessary or appropriate to (i) consummate the sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the APA, (ii) close the sale as set forth in the APA and this Order, and (iii)

execute and deliver, perform under, consummate, implement and close fully the APA, together with all additional instruments, documents and agreements that may be reasonably necessary or desirable to implement the APA and the sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA and such other ancillary documents.

5.      This Order shall be binding in all respects upon the Debtors, their estates, all creditors of (whether known or unknown), and holders of equity interests in the Debtors, any holders of Encumbrances against or on all or any portion of the Purchased Assets, all non-debtor counterparties to the Assumed Contracts, the Purchaser and all successors and assigns of the Purchaser. This Order and the APA shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser and their respective successors and assigns.

### Transfer of the Purchased Assets

6.      Pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code, the Debtors are authorized to transfer the Purchased Assets on the Closing Date. Upon the Closing, the Purchaser shall take title to and possession of the Purchased Assets subject only to the Permitted Liens and Assumed Liabilities, and such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets and, upon the Debtors' receipt of the Purchase Price, shall be free and clear of all Encumbrances except any Permitted Liens and Assumed Liabilities under the APA. The Purchased Assets are being sold as is and where is without any representation, covenant, guaranty or warranty of any kind or nature, except as provided in the APA and this Order. All proceeds payable by the Purchaser pursuant to the APA shall be paid directly to Wachovia Bank, National Association, as Administrative Agent (the "Agent"). The Agent is hereby authorized to apply such proceeds to the Prepetition Obligations (as defined in that certain Final Order Pursuant to Sections 105, 361, 362 and 363 of the Bankruptcy Code

Authorizing Use of Cash Collateral and Granting Adequate Protection, previously entered by this Court on January 9, 2009 (Docket #458)), as the same has been subsequently amended. Notwithstanding the foregoing, $1,300,000 of such proceeds shall be paid to the Debtors to fund payment of the breakup fee authorized and payable pursuant to the Bid Procedures Order (the "Breakup Fee").   The Debtors are authorized and directed to pay the Breakup Fee under the terms set forth in the Bid Procedures Order.

7.     [Reserved]

8.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the APA and this Order.

9.     All entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee at the Closing.

10.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel the Encumbrances of record except the Permitted Liens.

11.     If any person or entity which has filed statements or other documents or agreements evidencing Encumbrances on, or interests in, the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Encumbrances which the person or entity has or may assert with respect to the Purchased Assets,

the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

12.    This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

13.    The Debtors shall, subject to the terms and conditions of the APA, until the Closing Date, operate the Business in the usual and ordinary course (including, without limitation, paying all employee wages and withholding in the ordinary course), shall maintain the Purchased Assets, including the Fixed Assets and Rolling Stock, in accordance with past practice, and in the event that any Seller substitutes, disposes of or abandons any Purchased Assets in compliance with the terms of the APA, Sellers will likewise replace such assets with Purchased Assets of like kind and quality to the extent necessary to ensure the continued operation of the Business in the ordinary course and consistent with past practice.

### Assumed Contracts

14.    Except as set forth herein, the Debtors are authorized and directed at the Closing, to assume and assign each of the Assumed Contracts to the Purchaser free and clear of all

Encumbrances, and to pay the Cure Amounts set forth on Attached Exhibit B hereto either in cash at the Closing or into an escrow account acceptable to the Debtors, the Agent, the Committee and the Purchaser, to the extent any such Cure Amounts are disputed as of the Closing, provided that nothing in this Order shall be deemed to release or discharge any Encumbrances on any property owned by a non-debtor party to an Assumed Contract. The rights of the Debtors, the Committee, the Agent, the Purchaser, and any non-debtor party with respect to any Cure Amount paid into an escrow account as set forth herein are reserved. The payment of the applicable Cure Amounts as set forth in this Order shall (a) effect a cure of all defaults existing under the Assumed Contracts as of the Closing Date, (b) compensate for any actual pecuniary loss to such non-Debtors party resulting from such default, and (c) together with the assumption of the Assumed Contracts by the Debtors and the assignment of the Assumed Contracts to the Purchaser, constitute adequate assurance of future performance thereof. The Debtors shall then have assumed the Assumed Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assumed Contracts shall not be a default thereunder. After the payment of the relevant Cure Amounts as set forth herein, neither the Debtors nor the Purchaser shall have any further liabilities to the non-Debtors parties to the Assumed Contracts other than the Purchaser's obligations under the Assumed Contracts to the extent set forth in the APA, and the obligations of the Debtors (if any) on account of such Assumed Contracts under a confirmed plan of reorganization.

15.     Any provisions in any Assumed Contract that prohibits or conditions the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-

assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors, and assignment to the Purchaser of the Assumed Contracts have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Contracts.

16.    Upon the Closing and the payment of the relevant Cure Amounts, if any, the Purchaser shall be deemed to be substituted for the applicable Debtors as a party to the applicable Assumed Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Contracts.

17.    Upon the payment of the applicable Cure Amount, if any, and subject to the terms of the stipulation of the parties to any Assigned Contract filed with the Court, if any, (a) each Assumed Contract shall constitute a valid and existing interest in the property subject to such Assumed Contract, (b) none of the Debtors' rights will have been released or waived under any such Assumed Contracts, (c) the Assumed Contracts will remain in full force and effect, and (d) no default shall exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

18.    Except as set forth herein, the Purchaser has provided adequate assurance of its future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

19.    There shall be no rent accelerations, assignment fees, increases (including advertising rates) or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Assumed Contracts.

20.    Except as set forth herein, pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all parties to the Assumed Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of the Closing Date or arising by reason of the Closing.

21.    Purchaser may notify the Debtors of any Assumed Contract to be designated a Rejected Contract not previously listed on the APA by not later than five (5) days before the Closing.  If Purchaser so notifies the Debtors, such contract shall be added to the APA as a Rejected Contract and shall no longer be subject to the Cure provisions therein or herein.

22.    With respect to any Assumed Contract that has not been expressly assumed and assigned to the Purchaser on the Closing Date pursuant to an Order of the Court, upon any written notice from the Purchaser after Closing, which shall be delivered as soon as practicable but in any event not later than the "Effective Date" as defined in the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan"), the Debtors shall take all actions reasonably necessary (and in accordance with Section 11.3 of the Plan, as applicable) to seek Bankruptcy Court approval of the assumption and assignment to Purchaser, pursuant to section 365 of the Bankruptcy Code, of any contract set forth in the Purchaser's notice; provided that any applicable Cure Amount shall be satisfied solely by the Purchaser.

## Other Provisions

23.    Effective upon the Closing Date, all persons and entities who have held, hold or may hold any Claim (as defined under section 101(5) of the Bankruptcy Code) are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any (a)

Encumbrance (other than a Permitted Lien) arising under, out of, in connection with or in any way relating to the Debtors, the Purchaser, the Purchased Assets, or the operation of the Purchased Assets prior to the Closing of the Sale, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties; (iii) creating, perfecting or enforcing any Encumbrance against the Purchaser, its successors, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to issue or renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

24.    Except for the Permitted Liens and the Assumed Liabilities, the Purchaser shall not have any liability of the Debtors or their estates arising under or related to the Purchased Assets. Without limiting the generality of the foregoing, the Purchaser shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date,

including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing. The Purchaser has given substantial consideration under the APA for the benefit of the holders of Encumbrances. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Encumbrances against the Debtors or the Purchased Assets.

26. To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are deemed, to be transferred to the Purchaser as of the Closing Date.

26. To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the transaction contemplated by the APA.

27. The transactions contemplated by the APA are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the sale (including the assumption and assignment of the Assumed Contracts), unless such authorization and consummation of such Sale are duly stayed pending such appeal. The Purchaser is a good faith buyer within the

meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

28.     Nothing contained in any order of any type or kind entered in (i) this chapter 11 case or (ii) any related proceeding subsequent to entry of this Order shall conflict with or derogate from the provisions of the APA or the terms of this Order.

29.     Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Order shall be effective immediately upon entry and the Debtors and the Purchaser are authorized to close the sale as contemplated by the APA immediately upon entry of this Order.

30.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the sale as contemplated by the APA.

31.     For purposed of section 363(b)(1) of the Bankruptcy Code, the Debtors have not, in connection with offering a product or service, disclosed to one or more individuals a policy prohibiting the transfer of "personally identifiable information" (as defined in 11 U.S.C. § 101(41A)) about individuals to persons that are not affiliated with the Debtors.

32.     Notwithstanding anything to the contrary in this Order or the APA, to the extent any of the Purchased Assets consist of an interest in a consumer credit transaction subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations), Purchaser shall remain subject to the same claims and defenses that are related to such consumer credit transaction or such consumer credit contract to the same extent as Purchaser would be subject to such claims and defenses of the consumer if such interest had not been purchased pursuant to section 363, as provided for in section 363(o) of the Bankruptcy Code.

33.    The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

34.    The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that if such modifications, amendments or supplements are material, they have been consented to by the Committee, and the Agent, and notice of such modifications have been provided to the United States Trustee.  The Debtors shall promptly advise the Agent and the Committee of proposed modifications, supplements or amendments to the APA and other related documents.   The Committee and the Agent shall promptly advise the parties to the APA if they believe any proposed modifications, supplements or amendments are material, and as to their consent, or non-consent thereto.  The rights of the Purchaser, the Debtors, the Agent and the Committee to seek a determination of the Bankruptcy Court as to any issues relating to notification, materiality and/or consent as set forth in this Paragraph 34 are expressly reserved, and all parties agree that any such judicial resolution may occur on shortened notice, as permitted by the Bankruptcy Court's calendar from time to time.

35.    The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the sale as contemplated by the APA.

36.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

37.    To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in this chapter 11 case, the terms of this Order shall govern.

38.    To the extent there are any inconsistencies between the terms of this Order and the APA (including all ancillary documents executed in connection therewith), the terms of this Order shall control.

39.    Notwithstanding anything to the contrary contained herein, the Bidding Procedures Order remains in full force and effect and shall be binding on the Debtors and the Purchaser in all respects.

40.    Trucking Acquisition Company, LLC is designated as the Backup Bidder, and the bid submitted by Trucking Acquisition Company, LLC at the Auction on November 16, 2009 which offered to pay to the Debtors' estates the amount of $75,500,000, and which agreed to modify the provisions of Section 16.3 of the Asset Purchase Agreement submitted by Trucking Acquisition Company, LLC to change the payor of the amounts described therein from the "Seller" to the "Purchaser" is designated as the Backup Bid, in each case pursuant to the Bid Procedures Order.


DATE: _November 19_, 2009            SO ORDERED:

                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE