**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

In re:

GAINEY CORPORATION, et al.[1]

Debtors

_____/

Case No. 08-09092

Chapter 11
Petition Date:  October 14, 2008
Jointly Administered
Honorable James D. Gregg

**DEBTORS' FIRST AMENDED JOINT PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE,
AS FINALLY MODIFIED**

The Debtors, Gainey Corporation (Case No. 08-09092), Gainey Transportation Services, Inc. (Case No. 08-09094), Super Service, Inc. (Case No. 08-09096), Freight Brokers of America, Inc. (Case No. 08-09109), Lester Coggins Trucking, Inc. (Case No. 08-09095), and Gainey Insurance Services, Inc. (Case No. 08- 09097) (collectively, "Debtors), propose the following First Amended Joint Plan of Reorganization Under Chapter of the Bankruptcy Code ("Plan") pursuant to sections 1121(a) and 1123 of title 11 of the United States Code.

The Debtors are the proponents of the Plan ("Proponents") within the meaning of section 1129 of the Bankruptcy Code.   Reference is made to the Disclosure Statement distributed contemporaneously herewith for a discussion of the Debtors' history, businesses, properties, results of operations and historical financial information, projections and risk factors, and for a summary and analysis of the Plan and certain related matters. All holders of Claims who are entitled to vote on the Plan are strongly encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

## Article I

### Definitions and Construction of Terms

1.1     <u>Accounts Receivable Diminution Escrow</u> means, as of any date, the amount held in escrow by the Administrative Agent, pursuant to Section 5 of the Cash Collateral Order.

1.2     <u>Administrative Agent</u> means Wachovia Bank, National Association in its capacity as Administrative Agent under the Prepetition Loan Documents.

---

[1]    The Debtors are Gainey Corporation (Case No. 08-09092), Gainey Transportation Services, Inc. (Case No. 08-09094), Super Service, Inc. (Case No. 08-09096), Freight Brokers of America, Inc. (Case No, 08-09109), Lester Coggins Trucking, Inc. (Case No. 08-09095), and Gainey Insurance. Services, Inc. (Case No. 08-09097).

1.3    <u>Administrative Expense Claim</u> means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases and entitled to priority under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the estates of the Debtors, (b) any actual and necessary costs and expenses of operating the businesses of the Debtors, (c) any costs and expenses of the Debtors in connection with the administration and implementation of the Plan, (d) any indebtedness or obligations incurred or assumed by the Debtors or under the Plan in connection with the conduct of their businesses, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, (e) all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under Sections 330 or 503 of the Bankruptcy Code, and (f) any fees or charges assessed against the estates of the Debtors under section 1930 of Chapter 123 of title 28 of the United States Code.

1.4    <u>Affiliate</u> has the meaning given to such term in section 101(2) of the Bankruptcy Code.

1.5    <u>Affiliate Equity Interests</u> means the Equity Interests in Debtors Gainey Transportation Services, Inc., Super Service, Inc., Lester Coggins Trucking, Inc. and Freight Brokers of America, Inc., held by Debtor Gainey Corporation and the Equity Interests in Debtor Gainey Insurance Services, Inc., held by Harvey N. Gainey, Sr.

1.6    <u>Allowed</u> means with reference to any Claim (including any Administrative Expense Claim) or Equity Interest: (a) any Claim against or Equity Interest in the Debtors, proof of which was filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules or if no proof of Claim was so filed, any Claim against the Debtors which has been listed by the Debtors in the Schedules, as such Schedules may be amended from time to time in accordance with Rule 1009 of the Bankruptcy Rules prior to the closing of the Chapter 11 Cases, as fixed, liquidated, non-contingent and undisputed in amount (or as to which the applicable proof of Claim has been withdrawn or Disallowed) (i) as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, (ii) as to which no action has been commenced to avoid such Claim or Equity Interest within the applicable period of limitation fixed by the Plan, or (iii) as to which an objection has been interposed, to the extent such Claim or Equity Interest has been allowed (whether in whole or in part) by a Final Order, (b) if no proof of Equity Interest was so filed, any Equity Interest listed in the consolidated stockholders list maintained by Debtors as of the Confirmation Date, or (c) any Claim to the extent that it has been allowed by a Final Order; provided, however, that Claims Allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by Final Order. "Allowed Claims" shall not, for any purpose under the Plan, include interest, penalties or late charges on such Claims from and after the Petition Date unless otherwise expressly provided for in the Plan or by Final Order. In addition, "Allowed Claim" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

1.7    <u>Assets</u> mean all assets of the Debtors.

1.8    Avoidance Actions means any action authorized by Chapter 5 of the Bankruptcy Code.

1.9    Ballot means the form distributed to each holder of an impaired Claim that is entitled to vote to accept or reject the Plan, on which is to be indicated acceptance or rejection of the Plan.

1.10    Bankruptcy Code means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.11    Bankruptcy Court means the United States Bankruptcy Court for the Western District of Michigan, Grand Rapids Division, having jurisdiction of and over the Chapter 11 Cases, and to the extent of any reference under section 157 of title 28 of the United States Code, the unit of such District Court under section 151 of title 28 of the United States Code.

1.12    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, and any Local Rules of the Bankruptcy Court.

1.13    Bar Date means any date established by the Bankruptcy Code, Bankruptcy Rules or Final Order as the deadline to file a proof of Claim or proof of Equity Interest.

1.14    Business Day means any day other than a Saturday, Sunday or any other day on which commercial banks in Grand Rapids, Michigan are required or authorized to close by law or executive order.

1.15    Carve Out means either (i) the first $1.0 million or (ii) the first $2.0 million of the Sale Proceeds of the Collateral subject to the Allowed Lender Secured Claims.  The amount of the Carve Out shall be $2.0 million if the Sale includes all Insider Causes of Action as purchased assets, and shall be $1.0 million if it does not.  In the event the Carve Out is $2.0 million, $1,000,000 of the $2,000,000 amount payable shall be funded through a participation by Harvey N. Gainey, Sr.  The Carve Out shall be paid to the Liquidation Trustee by the Administrative Agent on the date the Sale is closed pursuant to a Sale Order which has become a Final Order if such disbursement is approved by the Bankruptcy Court as part of the Sale Order; otherwise, it shall be paid to the Liquidation Trustee by the Administrative Agent upon the Confirmation Order becoming a Final Order.

1.16    Case Professionals means persons retained and/or to be compensated pursuant to sections 326, 327, 328, 330, 503(b) and 1103 of the Bankruptcy Code or retained post-confirmation to perform professional services.

1.17    Cash means the equivalent of legal tender of the United States of America, however paid or transmitted.

1.18    Cash Collateral Order means the Final Order Pursuant to Section 105, 361, 362, and 363 of the Bankruptcy Code Authorizing the Use of Cash Collateral and Granting Adequate Protection dated January 9, 2009 [DN 458], as amended from time to time.

1.19    Causes of Action means, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, claims and demands whatsoever, whether known or unknown, existing or hereafter arising, whether pending or not, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date, including, without limitation, all Avoidance Actions arising under Chapter 5 of the Bankruptcy Code, except the Pending Causes of Action.

1.20    Chapter 11 Cases means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors which are being jointly administered, styled In re Gainey Corporation, et. al., Chapter 11 Case No. 08-09092, pending before the Bankruptcy Court.

1.21    Claim has the meaning provided in section 101(5) of the Bankruptcy Code.

1.22    Claims Objection means any objection asserted or filed against the holder of a Claim under the Bankruptcy Code or the Bankruptcy Rules, to determine the extent, validity or priority of such Claim.

1.23    Class means a category of holders of Claims or Equity Interests as set forth in Article III of the Plan.

1.24    Collateral means any property or interest in Property of the Estates of the Debtors subject to a Lien to secure the payment or performance of a Claim, which Lien or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.25    Committee means the statutory committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code appointed on November 7, 2008, and as such committee may be reconstituted from time to time, including any Post-Confirmation Committee.

1.26    Confirmation Date means the date on which the Confirmation Order is entered on the docket in the Chapter 11 Cases.

1.27    Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.28    Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.29    Confirmed means that the Confirmation Order has been entered on the docket in the Chapter 11 Cases.

1.30    DN means the docket number by which the referenced filed pleading may be found by accessing the official court docket in these Chapter 11 Cases.

1.31    <u>Debtors</u> mean, collectively; Gainey Corporation, Gainey Transportation Services, Inc., Super Service, Inc., Lester Coggins Trucking, Inc., Gainey Insurance Services, Inc. and Freight Brokers of America, Inc, whether in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code or otherwise.

1.32    <u>Debtor in Possession</u> means Gainey Corporation, *et al.* in its capacity as debtor in possession in these Chapter 11 Cases under section 1107(a) and 1108 of the Bankruptcy Code.

1.33    <u>Dickinson</u> means Dickinson Wright PLLC.

1.34    <u>Disallowed Claim</u> means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order, (b) a Claim that was not scheduled by the Debtors as a fixed, liquidated, noncontingent and undisputed Claim and which has not been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order, or (c) a Claim that is expressly disallowed under the terms of the Plan.

1.35    <u>Disclosure Statement</u> means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented, or modified from time to time and as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.36    <u>Disputed</u> means every Claim (i) which has been or hereafter is listed in the Debtors' Schedules as unliquidated, disputed or contingent or which is not listed in the Debtors' Schedules, (ii) which is specifically disputed under a particular provision of the Plan, (iii) as to which a timely objection has been interposed under the Plan and not withdrawn or determined by a Final Order, (iv) as to which a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3019 has been made and not withdrawn or determined by a Final Order, or (v) as to which a proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim was not timely or properly filed.  A Claim that is Disputed by the Debtors or the Liquidation Trustee as to its amount only, shall be deemed Allowed in the amount the Debtors or the Liquidation Trustee admit is owing, if any, and Disputed as to the excess.

1.37    <u>Disputed Claims Reserve</u> means the Cash reserve to be created by the Reorganized Debtor and distributed to the Liquidation Trustee in amounts sufficient for the Liquidation Trustee to make distributions under the Plan and the Liquidation Trust Agreement on account of all Disputed Claims if such Disputed Claims become Allowed Claims.

1.38    <u>Distributions</u> mean payments of cash to be made in accordance with the Plan.

1.39    <u>Distribution Record Date</u> means the date on which the Order approving the Disclosure Statement under section 1125 of the Bankruptcy Code is signed.

1.40    <u>Effective Date</u> means that day which is the first Business Day following the day that the Confirmation Order becomes a Final Order.

1.41    <u>Entity</u> shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

1791810.12

1.42    Equity Interest means the interest of any holder of any equity securities or other interests in any of the Debtors represented by the issued and outstanding shares of common or preferred stock (and all series thereof) in any of the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest which was in existence immediately prior to the Petition Date.

1.43    Estates mean the estates of the Debtors in these Chapter 11 Cases, created pursuant to section 541 of the Bankruptcy Code upon the commencement of these Chapter 11 Cases.

1.44    Excess Insurance Collateral Proceeds means any excess proceeds from the collateral of the Insurer Secured Claims after such claims have been paid in full by such Insurer.

1.45    Excluded Cash means $5,000,000 of the Cash held by the Reorganized Debtors after the closing of the Sale, to be distributed to the Liquidation Trustee, as provided in the Post-Confirmation Wind-Down Budget, on the date the Confirmation Order becomes a Final Order, free and clear of the Liens of the Prepetition Lenders (except as provided in Section 4.3(b)(iii)), to fund payments to the holders of Allowed Administrative Expense Claims (including Professional Compensation and Reimbursement Claims), Priority Tax Claims, Secured Tax Claims, Other Priority Claims, Unsecured Liability Claims (as provided in Section 4.5(b) of the Plan), Cure Payments as may be required under the Sale Order, and the fees and expenses incurred in connection with (a) winding down the Debtors' businesses and related affairs, (b) objecting to Claims, and (c) otherwise carrying out the terms of the Plan and the Liquidation Trust Agreement; provided however, the Excluded Cash cannot be used for any other purposes absent the consent of the Administrative Agent and the Committee.

1.46    Final Order means an order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari or other proceedings for reargument or rehearing shall have been waived in writing in form and substance satisfactory to the Committee and the Administrative Agent, or in the event that an appeal, writ of certiorari or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been upheld by the highest court to which such order was appealed, or from which certiorari, reargument or rehearing was sought and the time to take any further appeal, petition for certiorari or other proceedings for reargument or rehearing shall have expired, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.47    GAC means Gainey Aircraft Corporation, a Michigan corporation wholly owned by Harvey N. Gainey, Sr.

1.48    Gainey Equity Interests means the Equity Interests held in Debtor Gainey Corporation and in Debtor Gainey Insurance Services, Inc.

1.49    <u>GRIC</u> means Gainey Realty and Investment Corporation, a Michigan corporation wholly owned by Harvey N. Gainey, Sr.

1.50    <u>Insider</u> has the meaning given to such term in section 101(31) of the Bankruptcy Code.

1.51    <u>Impaired</u> means when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.52    <u>Insider Causes of Action</u> means any and all Causes of Action, or other claims of any nature, asserted against an Insider.

1.53    <u>Insurance Contract(s)</u> means any automobile liability insurance policies, workers compensation insurance policies, cargo insurance policies, general liability policy, or other policies of insurance under which the Debtors were the insured prior to the Effective Date.

1.54    <u>Insurer</u> means any party providing insurance to any of the Debtors under any of the Insurance Contracts.

1.55    <u>Insurer Secured Claim</u> means any Secured Claim of any Insurer against any of the Debtors arising on account of a right to reimbursement from one or more of the Debtors under the terms and conditions of an Insurance Contract existing as of the Petition Date between any of the Debtors and such Insurer which relates to an Unsecured Liability Claim.

1.56    <u>Intercompany Unsecured Claim</u> means any Claim against any Debtor held by another Debtor, or by GRIC or by GAC, other than any Claim arising in connection with the assumption or rejection of any executory contract or unexpired lease in accordance with section 365 of the Bankruptcy Code. All Intercompany Unsecured Claims shall be deemed to be Disallowed and extinguished under the Plan.

1.57    <u>Jaffe</u> means Jaffe, Raitt, Heuer & Weiss, P.C.

1.58    <u>Lender Secured Claim</u> means, with respect to a Prepetition Lender, such Prepetition Lender's aliquot share of the aggregate amount of the Secured Claims of all of the Prepetition Lenders, as such Secured Claim is determined by the Bankruptcy Court in accordance with the terms and conditions of the Plan and the amounts to be distributed to the Lenders in accordance with the provisions of Section 4.3(b) of the Plan, and as such aliquot share is determined in accordance with such Prepetition Lender's pre-petition interest in the Debtors' pre-petition credit facility.

1.59    <u>Lender Unsecured Claim</u> means, with respect to a Prepetition Lender, such Prepetition Lender's aliquot share of the aggregate amount of the Allowed Unsecured Claims of all of the Pre-Petition Lenders (as such aliquot share is determined in accordance with such Prepetition Lender's pre-petition interest in the Debtors' pre-petition credit facility), as such Unsecured Claims are determined based upon the amount of the Lender Secured Claim.

1.60    <u>Lien</u> has the meaning set forth in section 101(37) of the Bankruptcy Code (but a lien that has or may be avoided pursuant to an Avoidance Action shall not constitute a Lien).

1.61    Liquidation Trust means the entity created by the Liquidation Trust Agreement under Section 5.01 of the Plan or previously approved by the Bankruptcy Court prior to the Confirmation Hearing.

1.62    Liquidation Trust Agreement means the Liquidation Trust Agreement and Declaration of Trust approved by the Bankruptcy Court prior to the Confirmation Hearing or as established under Section 5.01 of the Plan and attached as **Exhibit A** to this Plan.

1.63    Liquidation Trustee means the person who will act under the Liquidation Trust Agreement as trustee as provided in Section 5.3(a) of the Plan, or any successor as provided for in the Liquidation Trust Agreement.

1.64    Net Proceeds means the net cash proceeds of the disposition of the Property of the Chapter 11 Estates disposed of under the Sale Order and the terms of the Plan by the Reorganized Debtor and/or the Liquidation Trustee.

1.65    Net Recoveries means the net cash proceeds of all Causes of Action and the Insider Causes of Action if not part of the Sale, after payment of all costs and expenses reasonably incurred in connection with the collection of such Causes of Action and the Insider Causes of Action if not part of the Sale, by the Liquidation Trustee.

1.66    Other Priority Claim means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code over unsecured Claims, but only to the extent entitled to such priority.

1.67    Other Secured Claim means any Secured Claim other than a Lender Secured Claim and an Insurer Secured Claim.

1.68    Other Unsecured Claim means a Claim other than an Administrative Expense Claim, a Priority Tax Claim, an Other Priority Claim, a Secured Tax Claim, an Other Secured Claim, a Lender Secured Claim, an Insurer Secured Claim, an Unsecured Liability Claim, a Convenience Claim or a Lender Unsecured Claim.

1.69    Pending Causes of Action means all pending suits filed before the date the Confirmation Order becomes a Final Order, other than the Causes of Action and the Insider Causes of Action.

1.70    Person shall have the meaning given to such term in section 101(41) of the Bankruptcy Code.

1.71    Petition Date means October 14, 2008, the date the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

1.72    Plan means this joint plan of the Debtors including, without limitation, any exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time.

1.73    Post-Confirmation Committee means the Committee which shall be formed or reconstituted pursuant to Section 7.1 of the Plan and charged with the duties set forth therein.

1.74    Post-Confirmation Wind-Down Budget means the budget, as may be amended from time to time by the Liquidation Trustee with the consent of the Administrative Agent, the Reorganized Debtor and the Committee, setting forth the budgeted expenses to be incurred by the Liquidation Trustee and/or the Reorganized Debtor, as applicable, in selling or liquidating the remaining Property of the Estates, objecting to claims, pursuing the Causes of Action and the Insider Causes of Action if not part of the Sale, winding down the business of the Reorganized Debtor from and after the Confirmation Order becomes a Final Order and administering the Liquidation Trust.

1.75    Post-Confirmation Wind-Down Reserve means the amount set forth in the Post-Confirmation Wind-Down Budget.

1.76    Postpetition Interest means interest, commencing on the Petition Date, on the then-outstanding principal amount of an Allowed Claim at the rate determined in accordance with applicable nonbankruptcy law, subject to the Bankruptcy Code.

1.77    Prepetition Lenders means the Lenders party to the Prepetition Loan Documents as of the Effective Date, including the Administrative Agent, in its capacity as a Lender.

1.78    Prepetition Loan Documents means all of the Prepetition Loan Documents described in the Cash Collateral Order.

1.79    Priority Tax Claim means any Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code, including any Claim of such governmental unit for post-petition interest as set forth under applicable law and Section 511 of the Bankruptcy Code

1.80    Professional Compensation Escrow means a non-interest bearing escrow account to be established by the Liquidation Trustee to be held by a financial institution acceptable to the Administrative Agent, the Reorganized Debtor and the Committee pending payment of any such Claim of Case Professionals that is Allowed by Final Order.

1.81    Professional Fees means any Claim of a Case Professional for compensation or reimbursement of costs and expenses relating to services incurred prior to and including the Effective Date, when and to the extent any such Claim is Allowed by Final Order.

1.82    Property means all real, personal, tangible and intangible property of the Debtors, including, without limitation, any property of the kind or nature accounted for on the Debtors' balance sheet as of the Petition Date, whether or not subject to any Lien, including the Rolling Stock and associated Net Proceeds, Cash, Accounts Receivable and the Pending Causes of Action, but excluding Causes of Action and Insider Causes of Action (if not part of the Sale) and associated Net Recoveries and the Excluded Cash.

1.83    Pro Rata means, when used with reference to a distribution of property to holders of Allowed Claims in a particular Class, or other specified group of Claims pursuant to Article

9

IV of the Plan, proportionately so that with respect to a particular Allowed Claim in such Class or in such group, the ratio of (a)(i) the amount of property to be distributed on account of such Claim to (ii) the amount of such Claim, is the same as the ratio of (b)(i) the amount of property to be distributed on account of all Allowed Claims in such Class or group of Claims to (ii) the amount of all Allowed Claims in such Class or group of Claims.

1.84     Reorganized Debtor means all of the Debtors or any successors thereto by merger, consolidation or otherwise, on or after the day following the date the Confirmation Order becomes a Final Order.

1.85     Rolling Stock means the tractors and trailers owned by any of the Debtors, substantially all of which are subject to a Lien in favor of the Administrative Agent for the benefit of the Lenders.

1.86     Sale means the sale of substantially all of the assets of the Debtors pursuant to section 363(b) of the Bankruptcy Code, as approved by the Sale Order.

1.87     Sale Order means a Final Order approving the Sale.

1.88     Sale Proceeds means the net Cash proceeds received by the Debtors from a closing of the Sale.

1.89     Schedules means the schedules of assets and liabilities and the statement of financial affairs filed with the Bankruptcy Court by the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.90     Secured Claim means any Claim, to the extent reflected in the Debtors' Schedules or a proof of claim as a Secured Claim, which is actually secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff, including Secured Tax Claims, Lender Secured Claims, Insurer Secured Claims and Other Secured Claims.

1.91     Secured Tax Claim means any Secured Claim of a governmental unit for unpaid taxes that is secured by a Lien on property arising from operation of a statute.

1.92     Unimpaired means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.93     United States Trustee means the United States Trustee appointed under section 591, title 28, United States Code to serve in the Western District of Michigan.

1.94     Unsecured Liability Claim means a Claim against any of the Debtors existing as of the Petition Date which arose on account of alleged bodily injury or property damage.

1.95    <u>Virchow</u> means Baker Tilly Virchow Krause, LLP.

1.96    <u>Interpretation; Application of Definitions and Rules Construction</u>.    Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter, Unless otherwise specified, all section, article, schedule or exhibits references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan.    The words "herein", "hereof", "hereto", "hereunder" and other words of similar import refer to the Plan as a whole and not to any' particular section, subsection or clause contained in the Plan.    The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.    A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.    The headings in the Plan are for convenience of reference only, and shall not limit or otherwise affect the provisions of the Plan.    Unless otherwise indicated herein, all references to dollars means United States dollars.    In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

## Article II

### Treatment of Administrative Expense Claims and Priority Tax Claims

2.1    <u>Non-Classification</u>.    As provided in section 1123(a) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified for purposes of voting on or receiving distributions under the Plan.    All such Claims are instead treated separately pursuant to the terms set forth in this Article II.

2.2    <u>Administrative Expense Claims</u>.    Except to the extent that any Entity entitled to payment of an Allowed Administrative Expense Claim agrees to a different treatment, each holder of an Allowed Administrative Expense Claim (other than Allowed Administrative Expense Claims for professional compensation and reimbursement of expenses which are specifically addressed in Section 2.3 below) shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable, <u>provided</u>, <u>however</u>, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors postpetition as of the Effective Date, to the extent not already paid by the Debtors prior to the Effective Date, shall be paid in full in Cash by the Liquidation Trustee from the Excluded Cash on the later of the Effective Date or pursuant to their ordinary business terms.

2.3    <u>Professional Compensation and Reimbursement Claims</u>.    On the date the Confirmation Order becomes a Final Order, the Reorganized Debtor shall establish and fund the Professional Compensation Escrow from the Excluded Cash pursuant to the Post-Confirmation Wind-Down Budget.    All Entities seeking an award by the Bankruptcy Court of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date under sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code

11

shall (a) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by not later than the date which is forty five (45) days after the Effective Date or such other date as is fixed by the Bankruptcy Court and (b) if granted such an award by the Bankruptcy Court, be paid in full in Cash in such amounts as are Allowed by the Bankruptcy Court (i) on the date upon which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim or as soon thereafter as is practicable, (ii) upon such other terms as may be mutually agreed upon between such holder of an Administrative Expense Claim and the Reorganized Debtor, or (iii) in accordance with the terms of any applicable order entered by the Bankruptcy Court.  All such amounts shall be paid first from the Professional Compensation Escrow, and thereafter by the Liquidation Trustee from the Excluded Cash.

2.4    <u>Priority Tax Claims</u>.  Except to the extent that the holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, with interest as provided under applicable non-bankruptcy law.  The Allowed Priority Tax Claims shall be paid by the Liquidation Trustee from the Excluded Cash.

## Article III

## Classification of Claims and Equity Interests

Claims, other than Administrative Expense Claims and Priority Tax Claims, and Equity Interests, are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as set forth below.

| Class I | Other Priority Claims | Unimpaired/Deemed to Accept |
| Class II | Other Secured Claims | Impaired – May Vote |
| Class III | Lender Secured Claims | Impaired – May Vote |
| Class IV | Insurer Secured Claims | Unimpaired/Deemed to Accept (deemed Allowed) |
| Class V | Unsecured Liability Claims | Impaired – May Vote |
| Class VI | Lender Unsecured Claims | Impaired – May Vote |
| Class VII | Other Unsecured Claims | Impaired – May Vote |
| Class VIII | Intercompany Unsecured Claims | Impaired/Not Allowed to Vote/Deemed to Reject |
| Class IX | Subordinated Insider | Impaired/Not Allowed to Vote/Deemed |

| | Unsecured Claims | to Reject |
| --- | --- | --- |
| Class X | Gainey Equity Interests | Impaired/Not Allowed to Vote/Deemed to Reject |
| Class XI | Affiliate Equity Interests Claims | Impaired/Not Allowed to Vote/Deemed to Reject |

**Article IV**

**Treatment of Claims and Equity Interests**

4.1    <u>Class I Other Priority Claims</u>.

(a)    <u>Impairment and Voting</u>.  Class I is unimpaired by the Plan.  Each holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.  Pursuant to LBR 3013, set forth on **Schedule 1** is a list of the holders of Other Priority Claims, and the amount of their respective Priority Claims, as identified by the Debtors as of the date of the Plan.

(b)    <u>Treatment</u>.  Except to the extent that a holder of an Allowed Other Priority Claim agrees to a different treatment, each holder of an Allowed Other Priority Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim on the later of the Effective Date and the date such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable.  The Allowed Other Priority Claims shall be paid by the Liquidation Trustee from the Excluded Cash.

4.2    <u>Class II Other Secured Claims</u>.

(a)    <u>Impairment and Voting</u>.  Class II is impaired by the Plan.  Each holder of an Allowed Other Secured Claim is entitled to vote on the Plan.  Pursuant to Bankruptcy Rule 3013, set forth on **Schedule 2** is a list of the holders of Other Secured Claims and the amount of their respective Other Secured Claims, as identified by the Debtors as of the date of the Plan.

(b)    <u>Treatment</u>.  All entities holding Allowed Other Secured Claims shall receive Cash in an amount equal to such Allowed Other Secured Claim on the later of: (i) the Effective Date; (ii) the date such Claim becomes an Allowed Other Secured Claim; and (iii) the date the asset securing an Allowed Other Secured Claim is sold.  The Allowed Other Secured Claims shall be paid by the Liquidation Trustee from the net proceeds derived from the sale of the assets securing the Other Secured Claim or, to the extent such Allowed Other Secured Claim is a Secured Tax Claim, such Allowed Other Secured Tax Claim shall be paid by the Liquidation Trustee from the Excluded Cash.  The Liquidation Trustee, in consultation with the Reorganized Debtor, the Committee, and the Administrative Agent, at its option, may surrender to an Allowed Other Secured Claim holder the asset(s) securing such Other Secured Claim in lieu of the payment of Cash as set forth above.

(c)    <u>Retention of Lien</u>.  Each holder of an Allowed Other Secured Claim shall retain any Liens securing its Allowed Other Secured Claim as of the Effective Date until full and final payment of such Allowed Other Secured Claim is made as provided herein, and upon such full and final payment such Liens shall be deemed null and void and shall be unenforceable for all purposes.

4.3    <u>Class III Lender Secured Claims</u>.

(a)    <u>Impairment and Voting</u>.  Class III is impaired by the Plan.  Each holder of a Lender Secured Claim is entitled to vote to accept or reject the Plan.  Pursuant to LBR 3013, set forth on **<u>Schedule 3</u>** is a list of the Prepetition Lenders and their respective Lender Secured Claims, as set forth on the attachment to the proof of Claim filed by the Administrative Agent. All such Lender Secured Claims are Allowed.

(b)    <u>Treatment</u>.

Each holder of a Lender Secured Claim shall retain all adequate protection payments received by the Administrative Agent for and on their behalf during the Chapter 11 Cases and all Sale proceeds paid to the Administrative Agent pursuant to the Sale Order (other than the Carve Out and the Excluded Cash), which shall be deemed to apply to the payment of the Lender Secured Claim, and each holder of a Lender Secured Claim shall further receive, in full and complete settlement, satisfaction and discharge of its Lender Secured Claim:

(i)    Subject to clause (iv) below and the terms of the Sale Order, on the date the Confirmation Order becomes a Final Order, unless previously distributed to the Administrative Agent prior to the Confirmation Hearing, each holder of a Lender Secured Claim shall receive its Pro Rata share of the Accounts Receivable Diminution Escrow and the Cash from the Reorganized Debtor, except the Carve Out and the Excluded Cash. The Reorganized Debtor shall distribute the Excluded Cash to the Liquidation Trust on the date when the Confirmation Order becomes a Final Order with such Excluded Cash to be utilized by the Liquidation Trustee as provided in the Post-Confirmation Wind-Down Budget, pursuant to Section 5.1(b) of the Plan.  The Administrative Agent shall distribute the Carve Out to the Liquidation Trustee on the closing of the Sale if approved as a disbursement by the Bankruptcy Court under the Sale Order and, if not, then on the date the Confirmation Order becomes a Final Order.  To the extent the Insider Causes of Action are part of the Sale, Harvey N. Gainey, Sr. shall deposit $1.0 million, representing his participation in the $2.0 million Carve Out, in escrow with the Administrative Agent upon the earlier of three (3) business days prior to the closing on the Sale or ten (10) days prior to the Confirmation Hearing.

(ii)    Subject to clause (iv) below and the terms of the Sale Order, each holder of a Lender Secured Claim shall receive its Pro Rata share of the Net Proceeds of the Property upon sale and/or liquidation of the Property, subject to any Other Secured Claims entitled to payment pursuant to Section 4.2(b) and exclusive of Property which are Causes of Action and the Carve Out.

(iii)    Subject to clause (iv) below and the terms of the Sale Order, each holder of a Lender Secured Claim shall receive its Pro Rata share of (a) the net Cash proceeds of the Pending Causes of Action, if any, and (b) any unused portion of the Excluded Cash, if any.

(iv)    All amounts payable to a holder of a Lender Secured Claim under the Plan shall be distributed to the Administrative Agent, for the benefit of each holder of a Lender Secured Claim.  The Administrative Agent's obligation to make distributions to the holders of Lender Secured Claims shall be governed by the terms of the Prepetition Loan Documents.

(c)    <u>Retention of Liens</u>.  Each holder of a Lender Secured Claim shall retain the Liens (or replacement Liens), if any, securing its Lender Secured Claim until (i) full and final payment of such Lender Secured Claim is made as provided herein, or (ii) such Lien is otherwise terminated in accordance with this Plan.  Upon such termination, such Liens shall be deemed null and void and shall be unenforceable for all purposes.  Upon the sale of any of the Property, the Liens shall transfer to the Net Proceeds.  Each holder of a Lender Secured Claim shall subordinate its liens, if any, on the Causes of Action, including the Insider Causes of Action, but not its right to payment under Section 4.6(b) to the holders of Allowed Other Unsecured Claims until the conditions set forth in Section 4.7(b) have been satisfied or the Liquidation Trustee and the Administrative Agent agreed otherwise.

4.4    <u>Class IV Insurer Secured Claims</u>.

(a)    <u>Impairment and Voting</u>.  Class IV is unimpaired by the Plan.  Each holder of an Insurer Secured Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>.  Each holder of an Allowed Insurer Secured Claim shall retain all of such holder's rights and remedies under any applicable Insurance Contract and any Collateral securing such holder's Claim against the Debtors, and shall be entitled to draw on any letter of credit held by such holder on account of such Insurer Secured Claim, in accordance with the terms and conditions of any such letter of credit.  To the extent not previously modified or terminated pursuant to order of the Bankruptcy Court, the automatic stay shall be deemed terminated immediately as of the Effective Date with respect to any and all such Insurer Secured Claims for purposes of permitting the holder of such Claims to assert the rights and remedies provided in this subsection (b), provided, that all of the rights of the Debtors that are assigned and transferred to the Reorganized Debtor as set forth herein, and any rights of any Insurer to defend any claim underlying an Insurer Secured Claim after the Effective Date are expressly reserved, and nothing herein shall constitute or be deemed a waiver of any defense, right or claim, including any right of setoff, that the Reorganized Debtor may have against any Person or Entity in connection with or arising out of any Insurer Secured Claim, and (c) further provided, that all of the rights of the Debtors are hereby transferred to the Reorganized Debtor on the date of the Confirmation Order becomes a Final Order unless transferred prior to the Confirmation Hearing under the Sale Order.

15

(c)    Other Provisions.  To the extent any Insurer holds a Claim against any of the Debtors for an amount owing under such Insurance Contract which is not secured by Collateral, or which is in excess of the value of any Collateral held by such Insurer, such excess Claim shall be deemed an Other Unsecured Claim, and Allowed, if at all, in accordance with the procedures for the allowance and payment of Other Unsecured Claims.

4.5    Class V Unsecured Liability Claims.

(a)    Impairment and Voting.  Class V is impaired by the Plan.  Each holder of an Unsecured Liability Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  Each holder of an Unsecured Liability Claim shall retain all of such holder's rights and remedies against the Debtors and with respect to any applicable insurance relating to such Unsecured Liability Claim.  To the extent not previously modified or terminated pursuant to order of the Bankruptcy Court, the automatic stay shall be deemed terminated immediately as of the Effective Date with respect to any and all such Unsecured Liability Claims for purposes of permitting the liquidation of such Unsecured Liability Claims by a court of competent jurisdiction, and permitting recourse to any applicable insurance relating to such Unsecured Liability Claim.  To the extent that any holders of an Unsecured Liability Claim shall be determined by a Final Order, or by an agreement acceptable to any applicable Insurers and the Debtors, after consultation with the Committee, to hold a claim in excess of the amounts payable under any applicable insurance of the Debtors, such Unsecured Liability Claim shall only be Allowed in such excess amount and, in satisfaction thereof, each holder of an Unsecured Liability Claim shall receive its Pro Rata share of $200,000, payable in Cash within thirty (30) days of the date of the entry of a Final Order determining all such Unsecured Liability Claims.  All of the rights of the Debtors and any Insurer to defend and liquidate any Unsecured Liability Claims, or object to the allowance of any Unsecured Liability Claim after the Effective Date are expressly reserved, and nothing herein shall constitute or be deemed a waiver of any defense, right or claim, including any right of setoff, that an Insurer or the Debtors may have against any Person or Entity in connection with or arising out of any Unsecured Liability Claim.

4.6    Class VI Lender Unsecured Claims.

(a)    Impairment and Voting.  Class VI is impaired by the Plan.  Each holder of an Allowed Lender Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  If the Sale does not include the Insider Causes of Action, each holder of a Lender Unsecured Claim shall receive, in full and complete settlement, satisfaction and discharge of such Lender Unsecured Claim, its Pro Rata share of (i) eighty percent (80%) of the Net Recoveries in excess of the initial $1.0 million recovered by the Liquidation Trustee until the holders of Other Unsecured Claims receive a twenty percent (20%) distribution on their Allowed Claims from the Net Recoveries when combined with the Carve Out.  Thereafter, all Net Recoveries shall be distributed to the holders of the Lender Unsecured Claims.  If the Sale includes the Insider Causes of Action, each holder of a Lender Unsecured Claim shall receive its Pro Rata share of eighty percent (80%) of the Net Recoveries until such time as the holders of Other Unsecured Claims receive a twenty percent (20%) distribution on their Allowed Claims from the Net Recoveries when combined with the Carve Out.  Thereafter, all Net Recoveries

16

shall be distributed to the holders of the Lender Unsecured Claims. All Net Recoveries shall be payable from time to time in the discretion of the Liquidation Trustee, the Committee and the Administrative Agent.

(c)    Other Provisions. The holders of the Lender Unsecured Claims shall not receive any distribution other than as provided in Section 4.6(b) of the Plan. All amounts payable to a holder of a Lender Unsecured Claim under the Plan shall be distributed to the Administrative Agent, for the benefit of each holder of a Lender Unsecured Claim. The Administrative Agent's obligation to make distributions to the holders of Lender Unsecured Claims shall be governed by the terms of the Prepetition Loan Documents.

4.7    Class VII Other Unsecured Claims.

(a)    Impairment and Voting. Class VII is impaired by the Plan. Each holder of an Allowed Other Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment. Each holder of an Allowed Other Unsecured Claim shall receive, in full and complete settlement, satisfaction and discharge of such Allowed Other Unsecured Claim, (i) its Pro Rata share of the Carve Out; (ii) its Pro Rata share of the initial $1.0 million of the Net Recoveries if the Insider Causes of Action are not part of the Sale, and (iii) its Pro Rata share of twenty percent (20%) of the Net Recoveries until the holders of the Other Unsecured Claims receive a twenty percent (20%) distribution on their Allowed Claims from the Net Recoveries when combined with the Carve Out. All Net Recoveries shall be payable from time to time in the discretion of the Liquidation Trustee, the Committee and the Administrative Agent.

4.8    Class VIII Intercompany Unsecured Claims.

(a)    Impairment and Voting. Class VIII is impaired by the Plan. Each holder of an Intercompany Unsecured Claim shall not be entitled to vote on the Plan. Each holder of an Intercompany Unsecured Claim is deemed to have rejected the Plan.

(b)    Treatment. Each Intercompany Unsecured Claim shall be deemed a Disallowed Claim for purposes of the Plan.

4.9    Class IX Subordinated Insider Unsecured Claims.

(a)    Impairment and Voting. Class IX is impaired by the Plan. No holder of such Subordinated Insider Unsecured Claim shall be permitted to vote to accept or reject the Plan. Each holder of a Subordinated Insider Unsecured Claim is deemed to have rejected the Plan.

(b)    Treatment. No payment will be made to any holder of a Subordinated Insider Unsecured Claim on account of such Claim, unless all of the holders of Claims provided in Classes I through VII of the Plan are paid in full.

4.10    Class X Gainey Equity Interests.

(a)    Impairment and Voting.  Class X is impaired by the Plan.  The holders of the Gainey Equity Interests are conclusively presumed to have voted to reject the Plan and, accordingly, they are not entitled to accept or reject the Plan.

(b)    Treatment.  The holders of Gainey Equity Interests shall not receive any distribution under the Plan on account of such Equity Interests unless Classes I through VII and Class IX of the Plan are paid in full.

4.11    Class XI Affiliate Equity Interests.

(a)    Impairment and Voting.  Class XI is impaired by the Plan.  The holders of Affiliate Equity Interests are conclusively presumed to have voted to reject the Plan and, accordingly, they are not entitled to accept or reject the Plan.

(b)    Treatment.  The holders of Affiliate Equity Interests shall not receive any distribution under the Plan on account of such Equity Interests unless Classes I through VII and Classes IX and X of the Plan are paid in full.

## Article V

### The Liquidation Trust and the Liquidation Trustee

5.1    The Liquidation Trust.

(a)    Creation of the Liquidation Trust.  The Liquidation Trust Agreement will establish the Liquidation Trust.  Unless previously approved by the Bankruptcy Court pursuant to a Final Order, on the date the Confirmation Order becomes a Final Order, the Liquidation Trust Agreement, a copy of which is attached as **Exhibit A** to the Plan and all of which terms and conditions are incorporated into the Plan, shall be deemed effective and approved by the Bankruptcy Court.  Except to the extent inconsistent with the terms of this Plan, the terms and conditions of the Liquidation Trust Agreement shall govern under this Plan.  Modifications to the Liquidation Trust may be made thereafter, provided the same are agreed upon by the Reorganized Debtor, the Committee and the Administrative Agent and are not inconsistent with the Plan, without the necessity of further Bankruptcy Court approval, or absent agreement, upon approval of the Bankruptcy Court.

(b)    Transfer of the Assets.  Unless previously transferred to the Liquidation Trust from the closing on the Sale, or otherwise ordered by the Bankruptcy Court, only the following assets shall be transferred by the Reorganized Debtor or the Administrative Agent to the Liquidation Trust on the date the Confirmation Order becomes a Final Order: (i) the Causes of Action and the Insider Causes of Action if not part of the Sale, as identified on **Schedule 4**, other than the Pending Causes of Action, (ii) the Carve Out, and (iii) the Excluded Cash.

(c)    Fees.  The fees and expenses of the Liquidation Trust shall be governed by the terms of the Liquidation Trust Agreement, and shall in any event not be payable by any purchaser in connection with the Sale.

18

5.2     <u>Direction to Parties</u>.  From and after the date the Confirmation Order becomes a Final Order, the Liquidation Trustee may apply to the Bankruptcy Court for an order directing any necessary party to execute or deliver, or to join in the execution or delivery of, any instrument required to effect a transfer of property dealt with by the Plan and the Liquidation Trust Agreement, and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan, pursuant to section 1142(b) of the Bankruptcy Code.

5.3     The Liquidation Trustee.

(a)     Designation of the Liquidation Trustee.  Barry P. Lefkowitz, CPA, CIRA will serve as the Liquidation Trustee.

(b)     Standing of the Liquidation Trustee.  The Liquidation Trustee shall have standing, in all respects, to enforce all rights set forth in the Plan and the Liquidation Trust Agreement.

(c)     Duties of the Liquidation Trustee.  The Liquidation Trustee's duties are:

(i) pursuit of the Causes of Action and the Insider Causes of Action if not part of the Sale, including Avoidance Actions;

(ii) after consultation with the Administrative Agent, liquidation of any remaining Property not sold as part of the Sale or otherwise turned over to the holders of an Allowed Other Secured Claim or holders of Allowed Lender Secured Claims;

(iii)  objections to all Claims and Interests arising under Classes I, II, IV, VII, VIII, IX, X and XI under the Plan, including objections to all Administrative Expense Claims (other than Allowed Administrative Expense Claims for professional compensation and reimbursement of expenses addressed in Section 2.3 of the Plan) and all Priority Tax Claims;

(iv) the wind down of the Debtors' affairs,

(v) distribution of funds to pay expenses of the Liquidation Trust, Claims and Interests arising under Classes I, II, and IV through XI under the Plan, including distributions to all Administrative Expense Claims (including Allowed Administrative Expense Claims for professional compensation and reimbursement of expenses addressed in Section 2.3 of the Plan) and all Priority Tax Claims;

(vi) consultation with the Committee and the Administrative Agent, and

(vii) other miscellaneous matters as provided in the Plan and the Liquidation Trust Agreement, including, without limitation, matters that may be provided under Section 6.2.

The wind-down shall include all actions necessary to wind up the remaining business affairs of the Debtors subsequent to the Sale, including but not limited to, the sale and liquidation of the Assets of the Estates (not otherwise sold pursuant to the Sale Order), the preparation of interim and final tax returns, termination of 401k plans, preservation and disposition of business records, resolution of COBRA, workmens' compensation and unemployment issues with former employees and governmental agencies, continuation and completion of reporting to the Bankruptcy Court, pursuit and collection of tax refunds, completion of all tax and 401k audits, completion of property tax allocations and property tax reconciliations and the recovery of utility deposits; provided however, the Reorganized Debtor, or such entity as the Reorganized Debtor may determine or designate, shall administer the Unsecured Liability Claims and the Insurance

Contracts in consultation with the Committee and the Liquidation Trustee, subject to Section 6.2 of the Plan.

(d)    <u>Professionals to the Liquidation Trustee</u>.  Jaffe and Virchow shall continue to serve as counsel and financial consultants, respectively, to the Committee.  In addition, Jaffe and Virchow shall serve as counsel and financial consultant for the Liquidation Trustee.  Such representation of the Committee and the Liquidation Trustee by Jaffe and Virchow shall not be deemed to be a conflict of interest, make Jaffe or Virchow or either of them have an interest adverse to the Estates or the Reorganized Debtor or otherwise not be disinterested.  The Liquidation Trustee, after consultation with the Committee, may hire additional professionals, appraisers, auctioneers or professional persons without seeking authority from the Bankruptcy Court.  The Reorganized Debtor and the Debtors' professionals shall remain available to assist the Liquidation Trustee with his duties and responsibilities set forth in Section 5.3(c) of the Plan; provided however, the Debtors' professionals shall not be obligated to perform any services, and provided further, that to the extent the Debtors' professionals agree to perform such services, and no actual conflict of interest exists, such professionals may simultaneously serve as professionals for the Reorganized Debtors, and such engagements shall not preclude payment of compensation from the Reorganized Debtors and the Liquidation Trust for services provided as set forth herein.

(e)    <u>Payment of Quarterly Fees</u>.  After the Confirmation Order becomes a Final Order, the Liquidation Trustee shall pay quarterly fees, pursuant to 28 U.S.C. § 1930(a)(6), to the U.S. Trustee until the Chapter 11 Cases have been converted, dismissed or closed by the Bankruptcy Court.

(f)    <u>Reservation and Preservation of Causes of Action</u>.

(i)    On the date the Confirmation Order becomes a Final Order, any and all Causes of Action and the Insider Causes of Action if not part of the Sale, including, without limitation, Avoidance Actions arising under Chapter 5 of the Bankruptcy Code (specifically, with respect thereto, § § 544, 545, 546, 547, 548, 549, 550 and 553 of the Code), in connection with any of the transfers described in the Debtors' Schedules, and any claims identified by the Committee in connection with their post-petition investigation of the Debtors, shall be reserved and preserved by, and for the benefit of, the creditors of the Chapter 11 Estates, and the Causes of Action and the Insider Causes of Action if not part of the Sale and their Net Proceeds shall be transferred to the Liquidation Trust for distribution subject to all of the terms and conditions of the Plan. Causes of Action and Insider Causes of Action which are transferred to the Liquidation Trust may be prosecuted only by the Liquidation Trustee.

(ii)    The Liquidation Trustee has the full power to bring and prosecute any Cause of Action and the Insider Causes of Action, if not part of the Sale, including those actions listed on **Schedule 4** attached hereto.  Such power shall include the power to sue on behalf of the Estates, to compromise any claim and to collect any amounts due on any Cause of Action and the Insider Cause of Action if not part of the Sale.  Except as otherwise provided in the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidation Trust, through the Liquidation Trustee, shall retain and may in its discretion and business judgment (except as otherwise limited by the Plan and the

21

Liquidation Trust Agreement) enforce Causes of Action, Insider Causes of Action if not part of the Sale, Claims and defenses and counterclaims to all Claims asserted against the Debtors and their Estates, including but not limited to, setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code.

(g)    Fees and Expenses.  In no event shall the Liquidation Trustee be required to expend its own funds.  Any fees and/or expenses incurred after the date the Confirmation Order becomes Final Order on behalf of the Liquidation Trust shall subject to reimbursement in accordance with the Liquidation Trust Agreement.

(h)    Effectuating Documents.  The Liquidation Trustee may execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements and documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the Liquidation Trust Agreement.

5.4    Liability.  The Liquidation Trustee shall be entitled to rely upon the advice of the Liquidation Trustee's professional persons and representatives concerning all matters, and upon the Plan and any security agreement, schedule, certificate, statement, report, notice or other writing which it believes to be genuine or to have been presented by a proper person.  Except for its own gross negligence or willful misconduct, neither the Liquidation Trustee nor any of its professional persons, or agents shall (i) be responsible for any recitals, representations or warranties contained in, or for the execution, validity, genuineness, effectiveness or enforceability of the Liquidation Trust Agreement; or (ii) in any event, be liable as such for any actions taken or omitted by them.  The Liquidation Trustee shall not be required to give any bond for the faithful performance of its or their duties hereunder.

## Article VI

### The Reorganized Debtor

6.1    Existence After the Confirmation Order Becomes a Final Order.

After the Confirmation Order becomes a Final Order, the Reorganized Debtor shall remain in existence to carry out the duties and functions reserved to the Reorganized Debtor under this Plan pursuant to the terms hereof, and in accordance with the Post-Confirmation Wind-Down Budget, which budget may be modified from time to time by the Liquidation Trustee after consultation with and the consent of the Reorganized Debtor, the Administrative Agent and the Committee.

6.2    Duties of the Reorganized Debtor.

Except as provided in the Sale Order and the amended APA described, approved, and incorporated therein, the Reorganized Debtor, in consultation with the Committee and the Liquidation Trustee, in addition to any other duties provided under the Plan, shall administer the Unsecured Liability Claims and the Insurance Contracts, including, but not limited to, pursuing objections to related Claims, but excluding Class IV Claims, as the Reorganized Debtor may determine.  In the event the Reorganized Debtor is unable to perform such duties relating to Unsecured Liability Claims and Insurance Contracts, such duties shall be performed by the

22

Liquidation Trustee. Professional persons may be retained by the Reorganized Debtor after the entry of the Confirmation Order after consultation with the Liquidation Trustee, the Administrative Agent and the Committee and without seeking authority from the Bankruptcy Court. The Post-Confirmation Wind-Down Budget, as it may be amended from time to time, shall provide for payment of any fees, including professional fees incurred by the Reorganized Debtor or the Liquidation Trustee in connection with the administration of the Unsecured Liability Claims and the Insurance Contracts. Professional persons retained by the Reorganized Debtor under this Section 6.2 may also provide services to the Liquidation Trust as set forth in Section 5.4 hereof provided that no actual conflict of interest exists, and such engagement shall not preclude payment of compensation from the Reorganized Debtors and the Liquidation Trust for services provided as set forth herein.

6.3    Substantial Consummation.

Substantial consummation of the Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

6.4    Funding of the Plan.

Cash payments required under the terms of the Plan with respect to obligations to the holders of Claims will be funded from the Excluded Cash, except (a) with respect to the holders of Allowed Lender Unsecured Claims, Cash payments shall be funded from the Net Recoveries, (b) with respect to holders of Allowed Other Unsecured Claims, Cash payments shall be funded from the Net Recoveries and the Carve Out, and (c) with respect to Allowed Other Secured Claims, other than Allowed Secured Tax Claims, either Cash payments from the net proceeds derived from the sale of the assets securing the Other Secured Claims or, at the option of the Liquidation Trustee, surrender of the assets securing the Other Secured Claim, as provided in Section 4.2(b) of the Plan, each after the Confirmation Order becomes a Final Order.

6.5    Closing of the Chapter 11 Cases.

When each Disputed Claim filed against the Debtors has become an Allowed Claim or a Disallowed Claim, and all Cash has been distributed in accordance with the terms of this Plan and the Liquidation Trust, the Liquidation Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

6.6    Insurance Related Obligations of the Debtors and the Reorganized Debtor. Subject to any applicable provisions of the Plan with respect to the allowance and treatment of Insurer Secured Claims, Allowed Unsecured Liability Claims, Administrative Expense Claims and Allowed Other Unsecured Claims of Insurers, and to the provisions of Section 6.2 hereof, all Insurance Contracts relating to the Debtors and their operations as of the date the Confirmation Order becomes a Final Order shall be administered by the Reorganized Debtor, or its designee as set forth in Section 5.3(c) hereof, in consultation with the Committee, the Liquidation Trustee and the Administrative Agent and in the ordinary course of business and in accordance with pre-petition practices, applicable policy, agreement and/or plan terms and applicable state law until such Insurance Contracts are terminated.

23

6.7    <u>Direction to Parties</u>.  From and after the date the Confirmation Order becomes a Final Order, the Reorganized Debtor may apply to the Bankruptcy Court for an order directing any necessary party to execute or deliver, or to join in the execution or delivery of, any instrument required to effect a provision of this Plan. and to perform any other act that is necessary for the consummation of the Plan, pursuant to section 1142(b) of the Bankruptcy Code.

6.9    <u>Counsel for the Reorganized Debtor</u>.  Dickinson (unless it is unwilling to serve) and/or such other counsel as the Reorganized Debtor may select, shall serve as counsel for the Reorganized Debtor hereunder.  The Post-Confirmation Wind-Down Budget, as it may be amended from time to time by the Liquidation Trustee after consultation with the Committee, the Administrative Agent and the Reorganized Debtor, shall provide for payment of any fees, including professional fees incurred by the Reorganized Debtor in connection with such services.

6.10    <u>Reservation and Preservation of Pending Causes of Action</u>.

The Reorganized Debtor has the full power to bring and prosecute any Pending Cause of Action, including those actions listed on **Schedule 5** attached hereto.  Such power shall include the power to sue on behalf of the Estates, to compromise any claim and to collect any amounts due on any Pending Cause of Action  Except as otherwise provided in the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may in its discretion and business judgment (except as otherwise limited by the Plan), after consultation with the Administrative Agent, the Committee and the Liquidation Trustee, enforce the Pending Causes of Action, Claims and defenses and counterclaims to all Claims asserted against the Debtors and their Estates, including but not limited to, setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code.  The Reorganized Debtor may delegate the powers provided herein to the Liquidation Trustee.

**Article VII**

**Post-Confirmation Committee**

7.1    <u>Post-Confirmation Committee</u>.

(a)    <u>Formation</u>.  On the Effective Date, the Post-Confirmation Committee shall be comprised of those members of the Committee willing to serve on the Post-Confirmation Committee.  Subject to the foregoing, the Committee shall be authorized, in the exercise of its reasonable discretion, to effectuate such procedural rules, bylaws or other agreements governing its makeup, voting and succession.

(b)    <u>Permitted Actions</u>.  The Committee shall be authorized to:

(i) review and consult with the Administrative Agent and the Liquidation Trustee regarding the Claims Allowance process, including pursuing any objections to the Allowance of Administrative Expense Claims (including Administrative Expense Claims for professional compensation and reimbursement of expenses provided for in Section 2.3 of the Plan), Priority

24

Claims, Priority Tax Claims and Claims and Interests falling under Classes I, II, IV, V and VII through XI of the Plan,

(ii) review, consult with and advise the Liquidation Trustee and the Administrative Agent in connection with pursuing, compromising or settling the Causes of Action and the Insider Causes of Action if not part of the Sale, including the Avoidance Actions,

(iii) review, consult with and advise the Liquidation Trustee in connection with any other matters related to the Trust Agreement, and

(iv) review, consult with and advise the Reorganized Debtor in connection with any other matters related to the Plan, including objections to Claims or the settlement and compromise of Claims and Pending Causes of Action, as set forth herein.

(c)    _Costs and Expenses_. The Committee shall be entitled to retain attorneys and other professionals as and when necessary.  The fees and costs of such professional persons shall be paid from the Liquidation Trust.  In addition, the members of the Post-Confirmation Committee shall be entitled to be reimbursed from the Liquidation Trust for the reasonable and necessary actual out of pocket expenses of its members.

7.2    _Settlement and Compromise of Claims Against the Prepetition Lenders_.

In consideration of the Carve Out being provided by the Prepetition Lenders to the Other Unsecured Creditors under the Plan, on the date the Confirmation Order becomes a Final Order, all claims, causes of action, rights and demands, whether in law or equity, known or unknown, asserted or unasserted, preserved for the Debtors and/or the Committee during the Chapter 11 Cases, against the Administrative Agent, the Prepetition Lenders, and their respective shareholders, members, officers, directors, employees, partners, affiliates, subsidiaries, advisors, professionals and agents are hereby discharged, released and relinquished pursuant to the terms of the Plan and shall constitute a settlement and compromise of claims approved by the Bankruptcy Court under Bankruptcy Rule 9019.

**Article VIII**

**Provisions Governing Acceptance or Rejection of the Plan**

8.1    _Voting of Claims_.  Each holder of an Allowed Claim in an impaired Class of Claims that is entitled to vote on the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as may be entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order(s) of the Bankruptcy Court.

8.2    _Elimination of Vacant Classes_. Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the

Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

8.3    <u>Nonconsensual Confirmation</u>.  If any impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majorities provided in section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan in accordance with the terms hereof or to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both.  With respect to any impaired Classes of Claims that are deemed to reject the Plan, the Debtors request that the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code.

## Article IX

### Provisions Governing Distributions

9.1    <u>Distributions for Claims and Equity Interests Allowed as of the Effective Date</u>. Distributions of Cash to be made on the Effective Date to holders of Allowed Claims shall be deemed made on the Effective Date, or (ii) with respect to any particular Claim, such later date when the applicable conditions of Sections 11.3 and 11.4 (regarding Cure payments for executory contracts and unexpired leases being assumed) or Section 9.3(c) (regarding undeliverable distributions), as applicable, are satisfied.  Distributions on account of Claims that become Allowed Claims after the Effective Date will be made pursuant to Article X of the Plan.

9.2    All distributions under the Plan to holders of Allowed Claims shall be made by the Liquidation Trustee pursuant to the Plan and the Liquidation Trust Agreement.

9.3    <u>Method of Delivery of Distributions Under the Plan</u>.

(a)    <u>Distributions</u>.  All distributions under the Plan shall be made in accordance with the priorities established by the Plan.  At the option of the Liquidating Trustee, any Cash payment to be made pursuant to the Plan may be made by check or wire transfer.

(b)    <u>Delivery of Distributions</u>.  Distributions to the holders of Allowed Claims will be made as follows:  (i) at the respective addresses set forth in the Schedules unless superseded by the address set forth on the proofs of Claim filed by holders of Claims, or (ii) at the address set forth in any written notice of address change delivered to the Debtors after the date of filing of any proof of claim.  Distributions to the holders of Lender Secured Claims and Lender Unsecured Claims shall be made to the Administrative Agent for further distribution to individual holders of such Claims in accordance with the Prepetition Loan Documents.

(c)    <u>Undeliverable and Unclaimed Distributions</u>.  Subject to the terms of this Section 9.3(c), distributions returned to the Liquidation Trustee or otherwise undeliverable will remain in the possession of the Liquidation Trustee, until such time as a distribution becomes deliverable. Undeliverable Cash will be held by the Liquidation Trustee, for the benefit of the potential Claim holders of such Cash, subject to the terms of the Plan.  If any holder of an Allowed Claim's distribution is returned as undeliverable, the Liquidation Trustee may, but shall not be required

to, take reasonable steps to attempt to deliver the distribution to the holder of the Allowed Claim. Any holder of an Allowed Claim that does not advise the Liquidation Trustee that it has not received its distribution within sixty (60) days after the date of attempted distribution will have its Claim for such undeliverable distribution discharged and will be forever barred from asserting any such Claim against the Liquidation Trustee, the Reorganized Debtor, the Debtors or their property. In such cases, undeliverable distributions of the Liquidation Trustee will be distributed in accordance with the Liquidation Trust Agreement. Distributions must be negotiated within sixty (60) days of the date of distribution.

(d)     Allocation of Plan Distributions. Except as may be otherwise set forth in the Plan with respect to a particular Claim, including, but not limited to the Lender Secured Claim, all distributions in respect of Allowed Claims will be allocated first to the original principal amount of such Claims (as determined for federal income tax purposes), with any excess allocated to the remaining portion of such Claims, if any.

(e)     Timing of Distributions. In the event any payment, distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

(f)     Distribution Record Date. As of the Distribution Record Date, any applicable books and records and/or transfer registers for each of the Classes of Claims as maintained by Debtors shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims. Neither the Reorganized Debtors nor the Liquidation Trustee will have any obligation to recognize any transfer or sale of Claims on or occurring after the Distribution Record Date and will be entitled for all purposes herein, and subject to all of the provisions of the Plan relating to the timing of the allowance of Claims, to recognize and make distributions on account of Allowed Claims only to those holders who are identified as holders of Claims as of the Distribution Record Date. Except as otherwise provided in a Final Order, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 prior to the Distribution Record Date will be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer may not have expired by the Distribution Record Date.

(g)     Setoffs. The Liquidation Trustee may, but shall not be required to, setoff against any Claim (for purposes of determining the Allowed amount of such Claim in respect of which distribution shall be made), any claims of any nature whatsoever that the Debtor may have or had against the holder of such Claim.

(h)     Distributions by the Liquidation Trustee. Distributions by the Liquidation Trustee shall be governed by the Liquidation Trust Agreement. In the case of undeliverable distributions, the Liquidation Trustee will distribute them to the Administrative Agent on account of the Lender Secured Claim after all the conditions set forth in Section 4.7(b) of the Plan are satisfied.

## Article X

## Provisions For Resolving and Treating Disputed Claims and Administrative Expense Claims

10.1    Objections to and Resolution of Administrative Expense Claims and Other Claims.

(a)    Except as to applications for allowance of compensation and reimbursement of expenses under sections 330, 331 and 503 of the Bankruptcy Code, unless the Liquidation Trustee agrees to delegate such authority to the Reorganized Debtor in the exercise of its reasonable discretion, the Liquidation Trustee, in consultation with the Administrative Agent, the Committee and the Reorganized Debtors, shall have the exclusive right and authority to (A) make and file objections to all Administrative Claims, Priority Tax Claims and Claims under Classes I, II, IV and VII through XI, and (B) compromise, settle, otherwise resolve or withdraw any objections to such Claims without approval of the Bankruptcy Court after consultation with the Administrative Agent and the Committee.  Subject to Section 6.2 hereof, the Reorganized Debtor shall have the exclusive right and authority to (A) make and file objections to Claims under Class V, and (B) compromise, settle, otherwise resolve or withdraw any objections to such Claims without approval of the Bankruptcy Court, after consultation with the Administrative Agent, the Liquidation Trustee and the Committee.

(b)    The Liquidation Trustee shall have ninety (90) days after the Effective Date to file all objections to Administrative Claims (other than applications for allowances of compensation and reimbursement of expenses and Administrative Expense Claims) and serve such objections upon the holder of the affected Claim.  The Liquidation Trustee and the Reorganized Debtor, as applicable, shall have six (6) months after the Effective Date to file all objections to all other Claims provided under Section 10.1(a) of the Plan and serve such objections upon the holder of the affected Claim.  The Liquidation Trustee and the Reorganized Debtor or either of them shall have the right to seek authority from the Bankruptcy Court to extend the dates for filing and serving the objections to the holders of such Claims.

10.2    No Distribution Pending Allowance, Subsequent Distribution.  Notwithstanding any other provision of the Plan, no Property shall be distributed under the Plan on account of any Disputed Claim unless and until such Claim is Allowed in accordance with the provisions of the Plan.  If a Disputed Claim has not been Allowed as of the date for any distribution on account of such Claim under the Plan, the amount otherwise distributable to the holder of such Claim under the Plan shall be deposited into the Disputed Claims Reserve, and held pending any determination of such Claim as an Allowed Claim for purposes of the Plan.  Upon a determination that such Disputed Claim is an Allowed Claim for purposes of the Plan, the Claim as Allowed shall be paid from the Disputed Claims Reserve in accordance with the terms and conditions of the Plan, but the amount paid shall not exceed the amount in the Disputed Claim Reserve reserved on account of such Claim.

10.3    Excess Funds.  Within ten (10) business days after all Disputed Claims as to which payment has been made into the Disputed Claims Reserve have become Allowed Claims or have otherwise been resolved by Final Order of the Bankruptcy Court, and all applicable

distributions have been made from the Disputed Claims Reserve, any amounts remaining in the Disputed Claims Reserve, subject to the provisions of Section 9.3 of the Plan, shall be distributed by the Liquidation Trustee to the Administrative Agent for distribution to the Prepetition Lenders on account of their Lender Secured Claim.

10.4    Estimation.  The Debtors may, at any time prior to the Effective Date, request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to section 502(e) of the Bankruptcy Code regardless of whether the Debtors have objected to such Claim.  In the event the Bankruptcy Court estimates any contingent or Disputed Claim, the estimated amount may constitute a maximum limitation on such Claim, as determined by the Bankruptcy Court.  Notwithstanding this, the Liquidation Trustee and the Reorganized Debtor, as applicable, may elect to pursue any supplemental proceedings to object to the allowance and payment of such Claim.

10.5    Remedies Not Exclusive.  All of the Claims objection and estimation procedures set forth in this Article X are cumulative and not exclusive of one another.

10.6    Distributions by the Liquidation Trustee.  Distributions to the holders of Allowed Administrative Expense, Allowed Priority Tax Claims and Allowed Claims arising under the Plan shall be made by the Liquidation Trustee, except with respect to the payment of holders of Allowed Claims under Class V of the Plan distributions shall be made first by the applicable Insurer and thereafter, to the extent that such Claims becomes an Allowed Unsecured Liability Claim is in excess of the applicable Insurance Contract coverage, then such distributions shall be made by the Liquidation Trustee as provided in Section 4.5(b) of the Plan.

## Article XI

### Executory Contracts and Unexpired Leases

11.1    Deemed Rejected

Unless already assumed or rejected by Final Order of the Bankruptcy Court (which may be an order entered in connection with the Sale), all executory contracts and unexpired leases of the Debtors which are not the subject of a pending application to assume as of the Effective Date shall be deemed rejected on the Effective Date except as provided in Section 11.3 of the Plan.

11.2    Rejection Claims

(a)    Rejection by Motion.  Any Creditor who has a Claim as a result of the rejection, other than by the terms of this Plan, of an executory contract or unexpired lease shall follow the procedures previously set forth in such order authorizing rejection for filing a claim, failing which such Claim shall be disallowed in its entirety.

(b)    Rejection by the Plan.  Any Creditor who has a Claim as a result of the rejection of an executory contract or unexpired lease by the terms of the Plan shall file a Proof of Claim for rejection damages thirty (30) days after the date such executory contract or unexpired lease is rejected, failing which such Claim shall be disallowed.

29

11.3   Assumed Contracts

The Debtor, after consultation with the Administrative Agent and the Committee, may elect on or prior to the Effective Date to assume those executory contracts and unexpired leases set forth on **Schedule 6** attached to the Plan. If the Reorganized Debtor elects to assume any executory contracts or unexpired leases, the Reorganized Debtor shall provide the party subject to the proposed executory contract or unexpired lease with notice of intent to assume and assign such executory contract or unexpired lease within ten (10) days of such assumption and assignment and advise such party of the proposed cure amount. If such party disagrees with the cure amount, the party must file an objection with the Bankruptcy Court within seven (7) days of receiving such notice. If the objection cannot be resolved with the Reorganized Debtor, the Bankruptcy Court shall determine the cure amount to be paid to such party, as well as any other issues related to the proposed assumption and assignment of the executory contract or unexpired lease.

11.4   GRIC Executory Contracts and Unexpired Leases.

Notwithstanding that certain executory contracts and unexpired leases between the Debtors and GRIC may be subject to the Sale, the Committee and the Liquidation Trustee, as applicable, shall have the right to object to the proposed cure amount associated with any assumption or assignment of such executory contracts and unexpired leases of GRIC.

**Article XII**

**Effect of Confirmation**

12.1   Term of Bankruptcy Injunction or Stays.   Unless otherwise provided in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

12.2   Injunction.   Except as otherwise expressly provided in the Plan or the Bankruptcy Code, the Confirmation Order or a separate order of the Bankruptcy Court, all Persons or Entities who have held, hold or may hold Claims against the Debtors and/or their estates, other than those Causes of Action and the Insider Causes of Action if not part of the Sale, preserved and assigned to the Liquidation Trust, and the Pending Causes of Action, preserved for the Reorganized Debtor, are permanently enjoined, from and after the date the Confirmation Order becomes a Final Order, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Reorganized Debtor with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Reorganized Debtor on account of any such Claim Interest, (c) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Reorganized Debtor or against the property of the Reorganized Debtor, other than actions to continue perfection of any Lien existing as of the commencement of the Chapter 11 Cases, and (d) commencing or continuing in any manner any action or other proceeding of any kind with respect to any claims which are extinguished, dismissed or released pursuant to the Plan.

12.3    Binding Effect.  Subject to the Confirmation Order becoming a Final Order, on and after the Confirmation Date, the Plan shall be binding upon and inure to the benefit of the Reorganized Debtor and the holders of Claims and Equity Interests and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a distribution under the Plan.

**Article XIII**

**Conditions to Confirmation**

13.1    Conditions Precedent to Confirmation.  The following are conditions precedent to the entry of the Confirmation Order, unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section 13.3 of the Plan;

(a)    The Confirmation Order is in form and substance reasonably satisfactory to the Reorganized Debtor, the Administrative Agent and the Committee.

(b)    The Plan shall not have been materially amended, altered or modified, unless such material amendment, alteration or modification has been made in accordance with Section 15.5 of the Plan.

(c)    All Exhibits to the Plan are in form and substance reasonably satisfactory to the Reorganized Debtor, the Administrative Agent and the Committee.

13.2    Conditions Precedent to Occurrence of Effective Date.  The following are conditions precedent to the occurrence of the Effective Date of the Plan, unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section 13.3 of the Plan;

(a)    The Bankruptcy Court shall have entered the Confirmation Order.

(b)    The Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order) approving and authorizing the Reorganized Debtor, the Committee and the Liquidation Trustee to take all actions necessary or appropriate to implement the Plan, including execution and delivery of the Liquidation Trust Agreement, if not previously authorized by the Bankruptcy Court, and the other transactions contemplated by the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan.

(c)    No stay of the Confirmation Order shall then be in effect.

(d)    The Plan, and the Exhibits thereto, shall not have been materially amended, altered or modified, unless such material amendment, alteration or modification has been made in accordance with Section 15.5 of the Plan.

(e)    The Effective Date shall have occurred.

1791810.12

13.3    <u>Waiver of Conditions</u>.  The conditions precedent to the entry of the Confirmation Order and to the occurrence of the Effective Date may be waived, in whole or in part, at any time by a written agreement of the Reorganized Debtor, the Administrative Agent and the Committee, without an order of the Bankruptcy Court.

**ArticleXIV**

**Retention of Jurisdiction**

14.1    <u>Jurisdiction of Bankruptcy Court</u>.  The Bankruptcy Court shall retain jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending or are filed prior to the Effective Date, and the allowance of any Claims resulting therefrom.

(b)    To hear and determine any and all adversary proceedings, applications and contested matters, even if filed after confirmation of the Plan.

(c)    To hear and determine any objections to Administrative Expense Claims, Claims or Equity Interests.

(d)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated.

(e)    To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code.

(f)    To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order.

(g)    To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code.

(h)    To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan.

(i)    To recover all Assets and Property of the Estates, wherever located.

(j)    To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code.

(k)    To hear and determine any requests to sell any Asset pursuant to section 363 of the Bankruptcy Code.

1791810.12

(l)    To hear any other matter not inconsistent with the Bankruptcy Code.

(m)    To hear and determine all actions pursuant to sections 105, 502, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, any collection matters related thereto, and settlements thereof, and any other Causes of Action, the Insider Causes of Action if not part of the Sale and the Pending Causes of Action, properly within the jurisdiction of the Bankruptcy Court.

(n)    To hear and determine any disputes concerning quarterly fees owing or claimed to be owing to the Office of the U.S. Trustee under section 1930(a)(6) of title 28 of the United States Code.

(o)    To enter a final decree closing the Chapter 11 Cases.

(p)    To determine any disputes regarding allowance of Post Effective Date fees and expenses.

(q)    To address, hear and determine any issues or dispute that arises under the Liquidation Trust Agreement.

## Article XV

### Miscellaneous Provisions

15.1    <u>Effectuating Documents and Further Transactions</u>.  The Reorganized Debtor and the Liquidation Trustee are authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the transactions set forth in, and the terms and conditions of, the Plan and the Liquidation Trust Agreement.

15.2    <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of notes or issuance of debt or equity securities under the Plan, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, registration, licensing, sales or similar tax.

15.3    <u>Limited Plan Exculpation</u>.  Neither the Debtors, the Administrative Agent, the Prepetition Lenders, or the Committee, nor any of their respective shareholders, members, officers, directors, employees, partners, affiliates, subsidiaries, advisors, professionals or agents, shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, negotiations regarding or concerning the Plan or any of its exhibits, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Debtors, the Administrative Agent, the Prepetition Lenders and the Committee, and each of their respective shareholders, members, officers, directors, employees, partners, affiliates,

subsidiaries, advisors, professionals and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

15.4    Post-Effective Date Fees and Expenses.  From and after the date the Confirmation Order becomes a Final Order, the Reorganized Debtor, the Liquidation Trustee and the Committee (subject to the provisions of the Plan), shall in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons incurred by them in connection with the implementation and consummation of the Plan and the Liquidation Trust Agreement, the reconciliation of Claims, the prosecution of Causes of Action, or any other matters as to which such professionals are employed; provided however, each month, each such professional shall serve a monthly fee statement on the Reorganized Debtor and the Liquidation Trustee, as applicable, with a copy to the Administrative Agent and the Committee by the 15th of each month for the preceding month. If no objection is filed within ten (10) days of service of such monthly fee statement, the Reorganized Debtor or the Liquidation Trustee, as applicable, may pay the fees and expenses reflected in the monthly fee statement.  If a timely objection is asserted with respect to payment of amounts reflected in the monthly fee statement, the Reorganized Debtor or the Liquidation Trustee, as applicable, may pay the non-disputed portion of the amount sought in the monthly fee statement.  If the parties are unable to resolve a dispute related to a monthly fee statement, the Bankruptcy Court shall retain jurisdiction to address any such disputes.

15.5    Amendment or Modification of the Plan.    Alterations, amendments or modifications of or to the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date, provided that (a) the Plan, as altered, amended or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, (b) the Administrative Agent and the Committee consent to such alterations, amendments or modifications of or to the Plan, and (c) the Debtors shall have complied with section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified by the Debtors at any time after the Confirmation Date and before substantial consummation, provided that (a) the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, (b) the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such alterations, amendments or modifications, and (c) the Committee and the Administrative Agent consent to such alterations, amendments or modifications of or to the Plan.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder or any distribution to be received in connection with any settlement pertaining to such holder.  Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

15.6    Severability.  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or

unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan and shall not require the resolicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

     15.7   <u>Revocation or Withdrawal of the Plan</u>. After consultation with the Administrative Agent and the Committee, the Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, the Plan shall be deemed withdrawn and shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any claims by or against the Debtors or any other Person or Entity or to prejudice in any manner the rights of the Debtors or any Person or Entity in any further proceedings involving the Debtors.

     15.8   <u>Notices</u>. All notices, requests and demands to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Administrative Agent
c/o Reed Smith LLP
2500 One Liberty Place
Philadelphia, PA 19103
Attn.: Matthew E. Tashman

Post-Confirmation Committee
c/o Jaffe Raitt Heuer & Weiss, P.C.
27777 Franklin Road, Suite 2500
Southfield, MI 48034
Attn.: Jay L. Welford and Judith Greenstone Miller

Reorganized Debtor
c/o Dickinson Wright PLLC
200 Ottawa Ave. NW, Suite 1000
Grand Rapids, MI 49503
Attn.: Daniel F. Gosch

Liquidation Trustee
Barry P. Lefkowitz
Baker Tilly Virchow Krause, LLP
One Town Sq., Ste. 600
Southfield, MI 48076-3710

     15.9   <u>Governing Law</u>. Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent any exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan and the Liquidation Trust Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan, without giving effect to the principles of conflicts of law of such jurisdiction.

1791810.12

15.10  <u>Withholding and Reporting Requirements</u>. In connection with the consummation of the Plan, the Liquidation Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

15.11  <u>Indemnification</u>.   Except for its or their own gross negligence or willful misconduct, neither (i) the Committee, its members, officers, attorneys, other professionals and/or agents; (ii) the Liquidation Trust  and the Liquidation Trustee, its officers, attorneys, other professionals and/or agents, (iii) the Administrative Agent and the Prepetition Lenders, their officers, attorneys, other professionals and/or agents, or (iv) the Reorganized Debtor, its members, officers, attorneys, other professionals and/or agents, shall have any liability to the Debtors, the Debtors' Estates, the Reorganized Debtor, the Committee, the Liquidation Trust, the Liquidation Trustee, any creditor, or any other party-in-interest.   In the event that any party brings any action against any of said parties, provided that such party, as the case may be did not engage in willful misconduct or act grossly negligent, the Reorganized Debtor and Liquidation Trust, as applicable, shall and hereby is required to indemnify such party, against expenses, including attorneys' fees, judgments, penalties, fines and amounts paid in settlement actually and reasonably incurred by the such party.   The termination of an action, suit or proceeding by judgment, order, settlement or conviction does not, by itself, create a presumption that such party, as the case may be, did not act in good faith and in a manner which such party reasonably believed to be in or not opposed to be in the best interest of the Estates and their creditors.

15.12  <u>Headings</u>.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

15.13  <u>Exhibits and Schedules</u>.  All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

15.14  <u>Filing of Additional Documents</u>.   On or before confirmation of the Plan, the Debtors shall file with the Bankruptcy Court such agreements and other documents, if any, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

15.15  <u>Plan Controls</u>.   To the extent the Plan is inconsistent with the Disclosure Statement or the Liquidation Trust Agreement, the provisions of the Plan shall be controlling.

15.16  <u>Subordination Rights</u>.   With the exception of any Claims of an Insider of the Debtors or an Affiliate of the Debtors, the classification and manner of satisfying all Claims under the Plan takes into consideration all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, that a holder of a Claim may have against other holders of Claims, which subordination rights are expressly reserved under the Plan and assigned to the Liquidation Trust except to the extent that the Insider Causes of Action are part of the Sale.

15.17  <u>Return of Security Deposits</u>. All security deposits provided by the Debtors to any Person or Entity at any time after the Petition Date not otherwise sold as part of the Sale shall be

turned over to the Liquidation Trustee within ten (10) days after the Effective Date, without deduction or offset of any kind.

15.18    <u>Bar Date for Administrative Expense Claims</u>.  Pursuant to Section 10.1(b) of the Plan, the Confirmation Order will establish a bar date for Administrative Expense Claims other than for Administrative Expense Claims for professional compensation and reimbursement of expenses of professionals which shall be thirty (30) days after the date the Confirmation Order becomes a Final Order, unless subject to a prior Final Order of the Bankruptcy Court establishing a Bar Date.  Holders of Allowed Administrative Expense Claims not paid prior to that date shall submit proofs of Claim on or before such bar date or be forever barred from doing so.  The notice of confirmation delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will set forth such date and constitute notice of the bar date for Administrative Expense Claims.

15.19    <u>Tax Liability</u>.    The Liquidation Trustee is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of any tax liability of the Debtors for all taxable periods ending after the Petition Date through and including the Effective Date.

15.20    <u>Time</u>.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

15.21    <u>Retention of Professionals of the Reorganized Debtor, the Committee and the Liquidation Trust</u>.  All Professionals retained by the Reorganized Debtor, the Committee and the Liquidation Trust under the terms of the Plan and the Liquidation Trust Agreement shall be required to remain disinterested and not have an interest adverse to the Estates, the Debtors, and the Reorganized Debtor.  Nothing contained in Sections 5.3 or 6.4 of the Plan shall be deemed to constitute an interest adverse to the Estates, the Debtors or the Reorganized Debtors or to make such professional not disinterested.

15.22    <u>Section 1125(e) of the Bankruptcy Code</u>.    The Debtors have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.


***(SIGNATURES ON FOLLOWING PAGE)***

1791810.12

Dated:  January 4, 2010

Gainey Corporation
For itself and each of the Debtors


By: _____

Its: _____


By:___ /s/ Daniel F. Gosch_____
      Daniel F. Gosch (P35495)
      Dickinson Wright PLLC
      Attorneys for Debtors
      200 Ottawa Ave. NW
      Suite 900
      Grand Rapids, Michigan 49503
      (616) 336-1015

GRAPIDS 29710-999 240915v4

1791810.12